IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 107,516

STATE OF KANSAS,
*Appellee*,

v.

RAYMOND CARL SWINT,
*Appellant*.

SYLLABUS BY THE COURT

1.

To preserve an argument that a trial judge improperly excluded evidence, K.S.A. 60-405 requires the proponent to either make known to the trial judge the substance of the evidence at issue in a form and by a method approved by the judge or indicate the substance of the expected evidence by questions indicating the desired answers. Compliance with K.S.A. 60-405 serves a two-fold purpose by assuring that (a) the trial judge is advised of the evidence's substance and the nature of the parties' arguments; and (b) an adequate record is made for appellate review.

2.

K.S.A. 60-405 does not require a formal offer of proof in the form of questions and answers. Such things as answers to discovery, arguments on a motion in limine, or in-court dialogue may fully set out the expected evidence and satisfy the statute's requirements depending on the circumstances.

1

3.

Generally, constitutional issues cannot be asserted for the first time on appeal unless: (a) The newly asserted claim involves only a question of law arising on proved or admitted facts and is determinative of the case; (b) consideration of the claim is necessary to serve the ends of justice or to prevent the denial of fundamental rights; or (c) the party raising the issue asserts that the district court is right for the wrong reason.

4.

Kansas Supreme Court Rule 6.02(a)(5) (2014 Kan. Ct. R. Annot. 40) requires an appellant raising a constitutional issue for the first time on appeal to affirmatively invoke and argue an exception to the general rule that such claims may not be raised for the first time on appeal.

5.

In K.S.A. 21-3504(a)(3)(A), the phrase "either the child or the offender, or both" does not state a material element of the crime of aggravated indecent liberties with a child but merely describes a secondary matter, the potential yet incidental objects of the offender's required intent. Thus, the phrase outlines options within a means and describes factual circumstances that may prove the distinct, material mental state element of the crime.

6.

The three-part test in *State v. Freeman*, 223 Kan. 362, 367, 574 P.2d 950 (1978), applies to a determination of whether a sentence's length is cruel or unusual punishment under Section 9 of the Kansas Constitution Bill of Rights.

Review of the judgment of the Court of Appeals in an unpublished opinion filed December 27, 2013. Appeal from Ford District Court; E. LEIGH HOOD, judge. Opinion filed July 2, 2015. Judgment of the Court of Appeals affirming in part and vacating in part the judgment of the district court is affirmed

on the issues subject to our review. Judgment of the district court on the issues subject to our review is affirmed.

*Heather Cessna*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*David D. Belling,* assistant county attorney, argued the cause, and *Jacob Fishman*, assistant county attorney, and *Derek Schmidt*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

BILES, J.: Raymond C. Swint appeals his convictions of aggravated indecent liberties with a child and attempted aggravated indecent liberties with a child. His principal claim is that the district court erred by excluding evidence that the victim allegedly recruited another child to fabricate other claims of abuse against him. Swint also appeals the hard 25 life sentence imposed under Jessica's Law, K.S.A. 21-4643, for the aggravated indecent liberties conviction, claiming it violates Section 9 of the Kansas Constitution Bill of Rights and the Eighth Amendment to the United States Constitution. We affirm his convictions and uphold the life sentence.

FACTUAL AND PROCEDURAL BACKGROUND

In April 2010, an 11-year-old daughter of Swint's family friends told a school counselor Swint had been touching her inappropriately. Swint was tried for two counts of aggravated indecent liberties with a child, K.S.A. 21-3504(a)(3)(A), and one count of attempted aggravated indecent liberties with a child, K.S.A. 21-3301 and K.S.A. 21-3504(a)(3)(A).

3

At trial, the victim testified Swint fondled her genitals on two occasions and described a third incident in which Swint requested she fondle his. Testifying in his own defense, Swint denied these allegations. A jury acquitted Swint of one aggravated indecent liberties charge but convicted him of the remaining aggravated indecent liberties charge and attempted aggravated indecent liberties charge. The district court sentenced Swint to life imprisonment without the possibility of parole for 25 years (hard 25) and lifetime postrelease supervision for the aggravated indecent liberties conviction. It sentenced him to a concurrent term of 155 months' imprisonment and lifetime postrelease supervision for the attempted aggravated indecent liberties conviction.

Swint timely appealed. A divided Court of Appeals panel affirmed the convictions and affirmed the sentence in part, vacating the lifetime postrelease supervision. *State v. Swint*, No. 107,516, 2013 WL 6839354 (Kan. App. 2013) (unpublished opinion). This court granted Swint's timely petition for review. Jurisdiction is proper. See K.S.A. 60-2101(b) (review of Court of Appeals decisions).

Swint advances claims regarding: (1) the district court' exclusion of certain evidence; (2) insufficient evidence of alternative means of committing the charged crimes; (3) prosecutorial misconduct; and (4) state and federal constitutional challenges to his hard-25 prison sentence. Additional facts will be detailed as pertinent to the issue discussed.

EXCLUSION OF EVIDENCE

Swint argues the district court erred by excluding evidence that the victim allegedly admitted lying about the allegations against him and had asked a cousin to fabricate other claims that he had sexually abused the cousin. We will consider these

4

contentions separately. We ultimately hold that neither issue is preserved for appellate review, each for a different reason.

*Additional Facts and Procedural Background*

Prior to trial, the State sought an order in limine prohibiting the offering of evidence that the victim "told a cousin, A.H., to fabricate rumors of inappropriate sexual conduct by defendant." The State asserted such evidence was "clearly collateral to the facts in issue" and would violate K.S.A. 60-422(d) (evidence of specific instances of conduct relevant only to prove that witness' character trait inadmissible). Swint opposed the State's motion, explaining: "The Defendant would show the specific instances of conduct occurred in 2010, *where the alleged victim told a close friend or relative to make up a similar story that the Defendant had touched the friend or relative*." (Emphasis added.) Swint argued this was material because it showed "state of mind and motivation to tell the story [the victim] is currently telling," occurred during the same time frame as the charges against him, and was pertinent to "the relationship of the parties when this event was occurring."

The court heard arguments on the State's motion prior to the victim's trial testimony. During that hearing, defense counsel explained the evidence in issue "*would not be used to a specific instance to show she's a liar*, just the relationship of the parties, what [the victim's] state of mind is and what her motivation is for her telling the story she's telling today." (Emphasis added.) In ruling, the district court made clear what evidence it was considering, stating, "It's an attempt to show that [the victim] *was trying to get someone else to potentially lie* based on the defense that this is being presented here." (Emphasis added.) The court further explained:

"We're not dealing here in this particular case where the victim has made prior accusations against this Defendant or other men. We're not dealing with prior inconsistent

5

statements or such other types of evidence. We're dealing with a situation where the victim supposedly told another person to make up a similar story against this Defendant."

The district court prohibited the defense "from asking the victim questions or presenting other evidence regarding this incident that we've talked about." A continuing objection was entered on the defendant's behalf.

Following Swint's convictions, the defense sought to set aside the verdict and have a new trial. In a posttrial hearing, Swint's counsel indicated the victim's cousin, A.H., was present to testify about "the statements that were excluded at trial. I need to get those in the record." But the district court did not permit any testimony, explaining, "I believe you've built a sufficient record as a proffer."

Swint's counsel then concluded, "I want to make clear that she would testify that— [A.H.] would testify that [the victim] had told her that the Defendant didn't do this, and that, to her—and, that [the victim] asked [A.H.] to make up a story similar to hers about touching, [A.H.] being touched by the Defendant." This is the first and only time in the record any suggestion appears about the victim allegedly admitting to lying about her claims against Swint, and there was no follow up to clarify how this additional component to A.H.'s claimed testimony would somehow have been included in the scope of the court's prior ruling in limine.

On appeal to the Court of Appeals, Swint asserted the district court's error encompassed the evidence that the victim both admitted falsifying her claims about Swint and asked A.H. to make up a similar story. And complicating the matter further, Swint also altered the legal basis for the claimed error by relying on *State v. Barber*, 13 Kan. App. 2d 224, 227, 766 P.2d 1288 (1989) (holding victim in sex crime case may be cross-

6

examined about prior false accusations based on constitutional Confrontation Clause rights despite K.S.A. 60-422[d] restrictions).

The panel unanimously held that Swint failed to preserve the claim related to the victim admitting to lying about her allegations against Swint. It noted Swint did not raise the admissibility of this alleged admission in the district court until the posttrial hearing. *Swint*, 2013 WL 6839354, at *6.

But the panel split over whether Swint preserved his claim relating to the evidence about the victim enticing A.H. to make up similar allegations. The panel majority affirmed the exclusion on two grounds:  (1) Swint failed to make an adequate proffer of the excluded evidence; and (2) Swint's appellate arguments relating to the admissibility of this evidence were different from those raised in the district court, *i.e.*, the Confrontation Clause argument. 2013 WL 6839354, at *9.

Judge Patrick D. McAnany dissented. He would have held Swint appropriately summarized the evidence before the trial court ruled on the motion in limine; that the district court believed Swint had made an adequate proffer after trial; and, after refusing A.H.'s testimony, the district court allowed Swint to present another short summary of the expected testimony. 2013 WL 6839354, at *20. Judge McAnany also disagreed that Swint could not raise his Confrontation Clause claim for the first time on appeal, reasoning this was an issue of law that should be resolved to prevent a denial of fundamental rights. 2013 WL 6839354, at *21.

*Alleged Prior Inconsistent Statement Not Preserved for Appeal*

In his appellate brief and again in his petition for review, Swint asserts:

"Prior to trial, the State filed a motion in limine, asking the district court to keep out evidence that the complaining witness in this case, [the victim], had approached another girl after the allegations in this case, *and admitted that she had made up the statements against Mr. Swint* and asked the girl to make up a similar story against Mr. Swint." (Emphasis added.)

But the italicized portion of this assertion is not supported by the record.

Under K.S.A. 60-405,

"[a] verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous exclusion of evidence unless it appears of record that the proponent of the evidence either made known the substance of the evidence in a form and by a method approved by the judge, or indicated the substance of the expected evidence by questions indicating the desired answers."

This court has carefully reviewed the State's pleadings, Swint's response, the parties' arguments, and the district court's statements at the motion in limine hearing. No one claimed the victim had admitted lying about her allegations against Swint. In fact, the district court clearly stated before ruling on the motion in limine, "*We're not dealing with prior inconsistent statements* or such other types of evidence. We're dealing with a situation where the victim supposedly told another person to make up a similar story against this Defendant." (Emphasis added.) Obviously, the district court understood the record as we do on review.

The Court of Appeals correctly held that the district court never excluded evidence that the victim supposedly admitted lying about her allegations. The first mention of this claimed evidence was at the posttrial hearing during defense counsel's argument. The district court could not have committed error because the question about the victim fabricating her allegations was never presented to that court prior to or during trial, and K.S.A. 60-405 presupposes that a party actually makes known to the district court what evidence is in controversy and subject to exclusion.

*Swint Adequately Proffered Evidence About the Victim Asking a Cousin to Lie*

Moving to the evidence actually excluded by the district court, we consider first the panel's split decision about the defense proffer. We disagree with the panel majority in one respect and hold defense counsel made a sufficient proffer.

A party being limited by the exclusion of evidence must sufficiently proffer the substance of the evidence to preserve the issue on appeal. *State v. Hudgins*, 301 Kan. 629, 651, 346 P.3d 1062 (2015). In this regard, K.S.A. 60-405 has a dual purpose: (1) It assures the trial court is advised of the evidence at issue and the nature of the parties' arguments; and (2) it assures an adequate record for appellate review. *In re Acquisition of Property by Eminent Domain*, 299 Kan. 37, 41, 320 P.3d 955 (2014). When the party fails to provide a sufficient proffer of the substance of the evidence, appellate review is precluded because the appellate court lacks a basis to consider whether the trial court abused its discretion. *Hudgins*, 301 Kan. at 651 (citing *State v. Evans*, 275 Kan. 95, 99-100, 62 P.3d 220 [2003]).

But no formal proffer is required if an adequate record is made in a manner that discloses the evidence sought to be introduced. Answers to discovery, the parties' arguments, or in-court dialogue may satisfy K.S.A. 60-405 depending on the

9

circumstances. *Eminent Domain*, 299 Kan. at 42. In considering the adequacy of a proffer made to the trial court, this court has considered information made known both contemporaneously with the trial court's ruling and provided after the trial has concluded. See *Hudgins*, 301 Kan. at 650-51 (sidebar at trial); *Evans*, 275 Kan. at 98-99 (hearing on motion in limine); *Marshall v. Mayflower Transit, Inc.*, 249 Kan. 620, 622-23, 822 P.2d 591 (1991) (proffer of excluded expert testimony submitted after trial).

In *Evans*, a murder defendant's informal proffer sufficiently described the substance of excluded evidence tending to show that a person other than the defendant committed the crime. *Evans*, 275 Kan. at 101. Counsel told the district court that eyewitnesses would testify this person possessed the murder weapon, a gun, and had the gun in his hand immediately after the fatal shot was fired and that they never saw the defendant with the gun. Counsel also told the district court other witnesses would confirm there was an argument between this person, the victim, and the defendant and that this person would deny his involvement in the shooting. 275 Kan. 97. Notably, nothing in *Evans* indicates counsel identified the witnesses whose testimony was excluded.

By way of contrast, in *Hudgins*, a felony-murder defendant failed to sufficiently set forth the substance of excluded evidence that a police officer violated department policy during a high-speed pursuit. The defendant proffered "'that the [trial court] accept the policy in the record for review'" but did not provide the policy to the district court. *Hudgins*, 301 Kan. at 650. In holding this proffer insufficient to permit review, this court reasoned: "From the record created by [the defendant], we are not aware what, if any, departmental policy might be in dispute or how that policy may have been violated. As a result, we lack sufficient information to determine whether evidence of the unspecified violation might have been relevant." *Hudgins*, 301 Kan. at 651.

10

The panel majority in Swint's appeal relied on two cases, *People v. Harris*, 333 Ill. App. 3d 741, 748, 776 N.E.2d 743 (2002), and *State v. Gardner*, 264 Kan. 95, 110, 955 P.2d 1199 (1998), to support its conclusion that the alleged evidence lacked foundation and that this underscored the proffer's "insubstantial basis." *Swint*, 2013 WL 6839354, at *8. We do not find these cases persuasive for the proposition advanced by the panel majority.

*Harris* was a corpus delicti case in which the court held an offender registration officer's alleged conversation with an unidentified person from the probation unit was insufficient to corroborate the defendant's admissions because, lacking the required foundation, evidence of the conversation was not admissible. *Harris*, 333 Ill. App. 3d at 750-51. And *Gardner* is distinguishable on its facts because the excluded evidence was of a witness who lived near a murder victim's house who, shortly after the murder, would have testified that an unknown male followed her home from a bus stop and said the words "'repeat the killing.'" 264 Kan. at 108. The court held the trial court was within its discretion to rule the statement lacked adequate foundation, reasoning the witness did not know who the man was, what date this occurred, or what the man looked like; only heard part of what the man said; and was not even clear what it was meant to communicate. *Gardner*, 264 Kan. at 110.

But unlike the ambiguous "'repeat the killing'" comment in *Gardner*, 264 Kan. at 108, context is not at issue here. If true, Swint's proffered evidence clearly has some bearing on the victim's credibility. Additionally, as Judge McAnany noted, a foundation objection was specifically raised and ruled on in *Gardner*. In Swint's case the State advanced no such argument, confining its challenge to the evidence's admissibility under K.S.A. 60-422.

11

We hold that the motions, arguments, and in-court discussions adequately advised the trial court what Swint sought to introduce as evidence regarding the victim allegedly asking her cousin to falsify similar allegations of sexual abuse against Swint. Defense counsel told the trial court A.H. would testify the victim asked her to "make up a story similar to hers about . . . being touched by the Defendant." And unlike *Hudgins*, in which the insufficient proffer wholly omitted the content of the excluded police department policy, the district court in this case was aware of the precise content of the testimony. Even more to the point, the district court declared itself satisfied with the defense proffer during the posttrial motions when A.H. was present and prepared to offer her testimony. The defense proffer was adequate to allow us to analyze the claim's merits.

*Constitutional Issue Not Preserved*

Our analysis faces another potential obstacle, however. As the panel discussed, Swint's constitutional claim is raised for the first time on appeal. *Swint*, 2013 WL 6839354, at *9. In the district court, Swint asserted that the excluded testimony about the victim asking her cousin to lie was not subject to the exclusionary provisions of K.S.A. 60-422(d) because he would not use the evidence for a purpose prohibited by that statute. Instead, he argued it would establish the victim's "state of mind and motivation to tell the story she is currently telling." On appeal, Swint advances a new theory that the district court erred by failing to recognize and employ a constitutionally based exception to K.S.A. 60-422(d) in sex crime cases, relying on *Barber*, 13 Kan. App. 2d at 226-27.

"Ordinarily, the party arguing for admission of evidence must provide the trial judge with a specific basis for the admission so the judge has a chance to fully consider whether the evidence should be admitted and to avoid any potential reversible error." *State v. Tague*, 296 Kan. 993, 998, 298 P.3d 273 (2013) (citing *State v. Chanthaseng*, 293

12

Kan. 140, 144, 261 P.3d 889 [2011]). Parties generally may not raise constitutional issues for the first time on appeal. *State v. Plotner*, 290 Kan. 774, 782, 235 P.3d 417 (2010).

Three exceptions have been recognized to this general rule. Generally, constitutional issues cannot be asserted for the first time on appeal unless: (1) The newly asserted claim involves only a question of law arising on proved or admitted facts and is determinative of the case; (2) consideration of the claim is necessary to serve the ends of justice or to prevent the denial of fundamental rights; or (3) the party raising the issue asserts that the district court is right for the wrong reason. *Tague*, 296 Kan. at 1000. But to comply with Kansas Supreme Court Rule 6.02(a)(5) (2014 Kan. Ct. R. Annot. 40), litigants relying on these exceptions need to "[explain] why an issue is properly before the court if it was not raised below—or risk a ruling that an issue improperly briefed will be deemed waived or abandoned." *State v. Williams*, 298 Kan. 1075, 1085-86, 319 P.3d 528 (2014); see also *State v. Godfrey*, 301 Kan. 1041, Syl., ___ P.3d ___ (2015) (Failure to satisfy Rule 6.02(a)(5)'s requirement to affirmatively invoke and argue an exception amounts to abandonment of the constitutional claim.).

Compounding the preservation problem, Swint's petition for review fails to advance any substantive reason why the panel majority erred in holding that Swint's appellate arguments constituted an abandonment of his arguments made to the district court and its refusal to take on the constitutional Confrontation Clause claim. See Supreme Court Rule 8.03(a)(4)(C) (2014 Kan. Ct. R. Annot. 78) ("The court will not consider issues not presented or fairly included in the petition [for review]"). Swint simply makes a passing reference to Judge McAnany's dissent and then essentially duplicates his appellate briefing to the Court of Appeals as to why the district court erred—instead of identifying the panel majority's error. This failure is especially egregious because taking up this new constitutional claim for the first time would require an appellate court to consider the issue without the trial court having made *Barber*'s

13

threshold predicate finding that "a reasonable probability of falsity exists" regarding the alleged victim's prior accusation. *Barber*, 13 Kan. App. 2d at 226. The panel majority noted this concern in declining to take up the constitutional claim, but Swint's petition for review does not address why it is wrong.

We affirm the panel majority's decision not to consider this issue for the first time on appeal. The preservation problem means we do not reach the merits of the claim.

ALTERNATIVE MEANS

Swint's next challenge to his convictions is that the phrase "with the intent to arouse or to satisfy the sexual desires of either the child or the offender, or both" in the aggravated indecent liberties statute, K.S.A. 21-3504(a)(3)(A), creates alternative means of committing these crimes and that the State only presented evidence Swint intended to satisfy his own sexual desires. But this contention has already been decided against Swint.

As we have previously held, the quoted language in K.S.A. 21-3504(a)(3)(A) does not create an alternative means crime. *State v. Britt*, 295 Kan. 1018, 1026, 287 P.3d 905 (2012) (phrase "'either the child or the offender, or both'" does not state material element of crime; merely describes potential yet incidental objects of the offender's required intent, and outlines options within a means, describing factual circumstances that may prove the distinct, material mental state element of the crime). Accordingly, Swint's argument fails.

14

Swint next argues the prosecutor committed reversible misconduct during closing arguments by improperly bolstering the victim's credibility and appealing to jurors' sympathy for her. The panel held one comment was an impermissible attempt to engender sympathy when the prosecutor said, "'Today, you have the power to say to [the victim], "We believe you."'" *Swint*, 2013 WL 6839354, at *14-15. The State has not challenged that holding. On review, Swint continues to argue this misconduct, coupled with an additional statement the panel held was appropriate, constitute reversible misconduct. We disagree and affirm the panel's holding that there was error but the error was harmless.

*Standard of Review*

Appellate review of a prosecutorial misconduct claim based on improper comments requires a two-step analysis. First, an appellate court decides whether the comments at issue were outside the wide latitude a prosecutor is allowed, *e.g.*, when discussing evidence. If so, there was misconduct. Second, if misconduct is found, an appellate court determines whether the improper comments prejudiced the jury against the defendant and denied the defendant a fair trial. *State v. Bridges*, 297 Kan. 989, 1012, 306 P.3d 244 (2013).

Appellate courts consider three factors in analyzing the second step: (1) whether the misconduct was gross and flagrant; (2) whether the misconduct showed ill will on the prosecutor's part; and (3) whether the evidence was of such a direct and overwhelming nature that the misconduct would likely have had little weight in the jurors' minds. But none of these factors individually controls; and before the third factor can override the first two, an appellate court must be able to say the harmlessness tests of both K.S.A.

2014 Supp. 60-261 and *Chapman v. California*, 386 U.S. 18, 24, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967), have been met. *State v. McCullough*, 293 Kan. 970, 990-91, 270 P.3d 1142 (2012).

When both constitutional and nonconstitutional errors clearly arise from the same acts and omissions, an appellate court begins with a harmlessness analysis of the constitutional error. If the constitutional error is reversible, an appellate court need not analyze whether the lower standard for harmlessness under K.S.A. 2014 Supp. 60-261 also has been met. *Bridges*, 297 Kan. 989, Syl. ¶ 16. Under both standards, the party benefiting from the error bears the burden to demonstrate harmlessness. *State v. Herbel*, 296 Kan. 1101, 1110, 299 P.3d 292 (2013).

*Discussion*

The first statement in contention occurred when the prosecutor discussed the attempted aggravated liberties charge, arguing:

"Instruction Number eight, this is count Number three, this is the attempted charge. This is the count that [the victim] had trouble remembering. This is the count that [the victim] had trouble describing to a room full of strangers. Nevertheless, we did hear evidence about it. We watched the interview. And, in that Meadowlark interview she says that, again, she was alone with [Swint]. Again, she was sitting on his lap. She said that while she was sitting on his lap, he grabbed her hand and he began pulling it toward his penis. [The victim] told you that while he was doing this, he said, 'Touch mine, it will make me feel better.' [The victim] responded to that by saying, 'I said no.'

16

"THE COURT: It's your time.

"[THE PROSECUTOR]: *Ladies and gentlemen, there is no reason why a little girl would know that touching an adult male's penis would make him feel better. There is no reason why she would make that up.*" (Emphasis added.)

Swint contends no evidence showed the victim did not understand how an adult male might feel and that the victim could have learned this from television, music, parental discussion, or sex education. Building on this, Swint argues the prosecutor's credibility argument was not grounded in evidence. The State counters that there was no evidence the victim was exposed to such materials, so it was reasonable to infer she learned this from Swint saying it. The State further contends: "[I]llustrating reasons in favor of a witness' credibility is not bolstering." The panel concluded the prosecutor's remark was not misconduct. *Swint*, 2013 WL 6839354, at *14.

Prosecutors must confine their comments to the evidence adduced at trial and reasonable inferences drawn from that evidence. *State v. King*, 288 Kan. 333, 351, 204 P.3d 585 (2009). When a prosecutor argues facts not in evidence, misconduct is committed. *State v. Akins*, 298 Kan. 592, 601, 315 P.3d 868 (2014). A prosecutor generally exceeds the proper bounds of argument by offering a personal opinion about witness credibility "because such comments are 'unsworn, unchecked testimony, not commentary on the evidence of the case.'" *State v. Duong*, 292 Kan. 824, 830, 257 P.3d 309 (2011).

In this instance, the statement was proper. The prosecutor did not offer an opinion about the credibility of young children generally or even the victim specifically. Instead, the prosecutor asked the jury to infer, based on the victim's age, that she could not have known the details she gave in her interview unless her testimony was true.

17

In the second statement, the prosecutor argued:

"Finally, ladies and gentlemen, remember what [the victim] has said over and over about why she did not tell anyone about this until she spoke to [a school counselor]. Remember that she said that she was scared no one would believe her.

"Today, you have the power to say to her, 'We believe you.' You have the power to convict Raymond Swint for the crimes that he committed. Thank you."

We accept the panel's conclusion that this statement was improper. *Swint*, 2013 WL 6839354, at *15. The State has not challenged that determination on review.

The remaining question is whether this misconduct requires reversal, *i.e.*, "whether the improper comments prejudiced the jury and denied the defendant a fair trial." *Bridges*, 297 Kan. at 1012. We examine whether the misconduct was gross and flagrant or motivated by ill will and whether the evidence was so overwhelming that the improper comment would have little weight in the jurors' minds. 297 Kan. at 1012. The panel held this statement was not gross and flagrant, reasoning that it was brief, not repeated, and followed by the prosecutor's admonition that the jury had the power to convict Swint, which, in the panel's view, "refocused the jury's attention on the task at hand and mitigated the suggestion that the jury had the power to tell [the victim] that it believed her testimony." *Swint*, 2013 WL 6839354, at *15.

We take a different view given that the prosecutor violated a longstanding rule against appealing to juror sympathies. See, *e.g.*, *State v. Adams*, 292 Kan. 60, 67-68, 253 P.3d 5 (2011) (In a decision issued before Swint's trial, this court held it was improper to argue the trial was "'[t]he only chance [the victim] will ever have to have someone held accountable for taking his life. So this day is as much about him if not more than anyone

18

else.'"); *State v. Tosh*, 278 Kan. 83, 92, 91 P.3d 1204 (2004) (improper to tell jury, "'You can protect her. You can find him guilty.'"). In addition, we disagree with the panel's assessment that the prosecutor refocused the jury's attention on its proper role when he said the jury had the power to convict Swint because it misreads the context of that statement. This statement equated convicting Swint with the jury telling the victim it believed her. This did not abate the improper effects of the misconduct—it was part of the misconduct.

The next factor considers whether the prosecutor was motivated by ill will. In this regard, a court considers whether the misconduct was deliberate, repeated, or in apparent indifference to a court ruling. *Bridges*, 297 Kan. at 1016. The panel held there was no ill will because the prosecutor did not persist with the statement or show indifference to a court admonishment to cease. *Swint*, 2013 WL 6839354, at *16. We agree. There was only one instance of misconduct; the prosecutor did not act indifferently to court rulings; and there is no suggestion the prosecutor mocked Swint in making the statement.

Finally, we consider whether the evidence was so direct and overwhelming that the improper comment would have had little weight in the jurors' minds. The State bears the burden of demonstrating harmless error. *Akins*, 298 Kan. at 612. To satisfy its burden, the State must convince the court, beyond a reasonable doubt, that there is no reasonable possibility the misconduct affected the jury's verdict. 298 Kan. at 614. The panel held the improper conduct was harmless, noting it was brief and that there was substantial evidence of Swint's guilt. *Swint*, 2013 WL 6839354, at *16.

We agree. The evidence in this case was not overwhelming because it hinged entirely on the credibility of the victim's testimony; but it was nonetheless direct evidence supporting the jury's guilty verdicts. Considering the lack of prosecutorial ill will and the misconduct's brevity, we conclude the State has satisfied its burden of demonstrating

19

there is no reasonable possibility the misconduct affected the trial's outcome in light of the entire record.

CRUEL AND/OR UNUSUAL PUNISHMENT

Prior to sentencing, Swint moved the district court to declare the hard 25 life sentence he faced unconstitutional under the state and federal constitutions. After hearing arguments, the court made findings of fact and conclusions of law and denied Swint's motion. The panel affirmed regarding the § 9 claim, relying heavily on this court's decisions in *Britt* and *State v. Woodard*, 294 Kan. 717, 280 P.3d 203 (2012). *Swint*, 2013 WL 6839354, at *17-18. But the panel also concluded that Swint waived or abandoned his Eighth Amendment claim by briefing his state and federal claims together and not explaining "how Eighth Amendment law might *differ* in his case from the Section 9 analysis . . . ." 2013 WL 6839354, at *16. We consider the § 9 challenge first.

*Swint's sentence does not violate § 9.*

Whether a sentence is cruel or unusual in violation of § 9 encompasses both legal and factual determinations. *State v. Mossman*, 294 Kan. 901, 906, 281 P.3d 153 (2012) (citing *State v. Ortega-Cadelan*, 287 Kan. 157, 160, 194 P.3d 1195 [2008]). On appeal, a district court's factual findings are reviewed for substantial competent evidence. An appellate court reviews, but does not reweigh, the evidence. The legal conclusions drawn from the factual findings are reviewed de novo. 294 Kan. at 906.

The State may not inflict cruel or unusual punishment upon persons convicted of crimes. Kan. Const. Bill of Rights, § 9. This prohibition includes within its scope punishment that, "although not cruel or unusual in its method, . . . is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends

20

fundamental notions of human dignity." *State v. Freeman*, 223 Kan. 362, 367, 574 P.2d 950 (1978); see also *State v. Gomez*, 290 Kan. 858, Syl. ¶ 9, 235 P.3d 1203 (2010). To determine whether a sentence's length is unconstitutionally disproportionate under § 9, Kansas courts consider three factors commonly known as the *Freeman* factors:

"(1)    The nature of the offense and the character of the offender should be examined with particular regard to the degree of danger present to society; relevant to this inquiry are the facts of the crime, the violent or nonviolent nature of the offense, the extent of culpability for the injury resulting, and the penological purposes of the prescribed punishment;

"(2)    A comparison of the punishment with punishments imposed in this jurisdiction for more serious offenses, and if among them are found more serious crimes punished less severely than the offense in question the challenged penalty is to that extent suspect; and

"(3)    A comparison of the penalty with punishments in other jurisdictions for the same offense." *Freeman*, 223 Kan. at 367.

*First* Freeman *factor*

In addressing the first factor, the district court stated:

"One could argue, as the Defendant appears to in this case, that the nature of the present offense was questionable. However, a jury of 12 people heard both the Defendant and the victim's version of these events. The jury unanimously convicted Mr. Swint of these two separate counts.

"The court has found that the evidence was sufficient to sustain these two convictions. Therefore, the Defendant's argument to this Court, in this Court's mind, lacks merit and goes against the Defendant.

21

"Some might argue that the facts of this case support that the nature of the offense was nonviolent since there was no physical harm resulting to the victim, and no weapons were used as the evidence shows.

"However, this belies the psychological and emotional trauma inflicted on young victims. The extent of this type of harm may not be known for years. This type of harm is recognized as a type that should be considered when punishing an offense.

"Further, this Court found that the Kansas legislature has defined the Defendant's crimes as sexually violent, 21-4642. It's also been defined as a crime of extreme sexual violence in 21-4716, which was in effect at the time these crimes were committed. It's also, I believe, been defined as a sexually violent crime in 22-4902. So, in various Kansas statutes, our legislature has defined attempts and aggravated indecent liberties and attempted aggravated indecent liberties as sexually violent crimes.

"In looking at this particular Defendant, this Court sees a man who is in his late 40's to early 50's at the time of these offenses for which he has been convicted. The defendant has no scorable prior criminal history. He has a good work history as documented by his employer [who testified in support of a motion to depart], and is, apparently, a valid employee, again according to Mr. Unruh.

"In looking at his character in regard to the degree of danger present to society, this Court finds that the evidence that it has before it supports a finding that there is a high degree of danger presented to society and a real likelihood that this Defendant would and could repeat his activity.

"Here, the acts the Defendant was convicted of had happened at different times over an extended period of time.

"The Defendant's testimony at trial supports a finding that he is around children in his home. And, further, he has accepted no responsibility for his action and has shown no remorse for these actions.

22

"Therefore, this particular factor, number one, weighs in favor of the constitutionality of the law."

On appeal, Swint maintains his crime did not involve physical violence and that he is innocent and was convicted based on the victim's uncorroborated testimony. As to his own character, Swint argues his crime was not committed against a random victim but instead was a crime of opportunity; he has no significant criminal history and no prior history of sex offenses; he has never had an opportunity for treatment; and he has a low risk of recidivism.

The district court's analysis of Swint's argument that his crime is nonviolent squares with this court's numerous prior cases rejecting the same argument. See *State v. Spear*, 297 Kan. 780, 800, 304 P.3d 1246 (2013); *Mossman*, 294 Kan. at 909-10; *Woodard*, 294 Kan. at 727. And although this court has yet to address whether the quality of evidence is relevant in this context, it is logically inconsistent to consider the defendant's possible innocence when analyzing proportionality of a criminal sentence because the determination of guilt was for the finder of fact. It also does not appear this court has addressed a defendant's lack of remorse in a *Freeman* case, but this court has approved lack of remorse as appropriate for consideration in criminal sentences in cases prior to the comprehensive sentencing guidelines. See *State v. Hemby*, 264 Kan. 542, 553, 957 P.2d 428 (1998).

We also do not see how Swint's argument that his was merely a crime of opportunity weighs in his favor. The district court pointed out that, as a grandfather figure, Swint abused a position of trust in the victim's life. In *Spear*, in which a man committed aggravated indecent liberties against his niece, the court similarly reasoned that the defendant's position of trust as a family relative tended to demonstrate that the

23

life sentence imposed was not cruel or unusual. *Spear*, 297 Kan. at 800. The *Spear* court also noted the defendant, like Swint, breached this trust on more than one occasion. 297 Kan. at 800.

Finally, Swint's argument about his supposedly low risk of recidivism is without merit. Kansas cases recognize "there are 'grave concerns over the high rate of recidivism among convicted sex offenders and their dangerousness as a class. The risk of recidivism posed by sex offenders is "frightening and high."'" *Mossman*, 294 Kan. at 909-10. Also importantly, Swint presented no evidence countering the district court's determination that there was "a high degree of danger presented to society and a real likelihood that [Swint] would and could repeat his activity." The court found this conclusion was supported by Swint's presence around children in his home and the fact he had not accepted responsibility for his crime or shown remorse.

We hold the district court appropriately concluded this first *Freeman* factor weighs against Swint. Although Swint lacks a significant criminal history, his crime was a sexually violent offense. To commit it, Swint abused his position of trust as a family friend and grandfather-figure. Moreover, despite his contention that he is unlikely to reoffend, as the district court noted, this case involves multiple offenses.

*Second* Freeman *factor*

The second *Freeman* factor directs the court to compare the punishment for Swint's offense with those imposed in Kansas for more serious offenses. See *Mossman*, 294 Kan. at 912. If that review reveals more serious crimes are punished less severely than Swint's offense, "the challenged penalty is to that extent suspect." *Freeman*, 223 Kan. at 367. The court considers whether the sentence imposed is grossly disproportionate in relation to the sentence for the more serious offense, considering the

24

penological purposes of the sentence under review, the seriousness of defendant's crime, and other considerations under the first *Freeman* factor. See *Mossman*, 294 Kan. at 917.

The district court ruled the second factor weighed against Swint, as did the Court of Appeals. *Swint*, 2013 WL 6839354, at *18. Swint argues, as he did before the district court, that the penalty for his crime is suspect because it is more severe than the penalty for second-degree murder, which Swint contends is a more serious offense. But this court has rejected this comparison to homicide crimes in aggravated indecent liberties cases. See *Spear*, 297 Kan. at 801-02; *Woodard*, 294 Kan. at 723-24. And Swint presents no new arguments to reexamine these conclusions. Accordingly, this factor does not weigh in Swint's favor.

### *Third* Freeman *factor*

Finally, we compare the challenged punishment with punishments in other jurisdictions for the same offense. Swint argues this comparison demonstrates the disproportionality of his sentence because Kansas is one of only five states prescribing a life sentence with a minimum term before parole eligibility for first-time child sex offenders. We note Swint also represents to us that 18 states would sentence a person convicted of those jurisdictions' equivalent crimes to a definite term of imprisonment, with the mandatory minimum term being 25 years.

Curiously, instead of countering Swint's extensive review of state penalties for sex crimes, the State simply cites to and relies on this court's analysis in *Woodard*. In that case, the court held this factor weighed against a defendant based upon the court's review of cases in other jurisdictions upholding sentences "not out of proportion" with Kansas' sentence for aggravated indecent liberties. See *Woodard*, 294 Kan. at 724-25.

25

But the State's shallow response to Swint's argument on this third *Freeman* factor raises a complication that favors Swint. In *State v. Newcomb*, 296 Kan. 1012, 1020, 298 P.3d 285 (2013), this court noted the State had failed to "respond directly to [the defendant's] specific contentions and citations about aggravated indecent liberties." The court held the State's "casual approach" to the issue compelled it to accept for purposes of the argument the assertion that Kansas has one of the harshest penalties in the nation for indecent liberties committed by an adult against a child younger than 14. 296 Kan. at 1020-21.

Similarly, Swint's specific and detailed argument is essentially unchallenged—although the State's response here cannot be viewed as so "cavalier" as the response in *Newcomb*. Based on Swint's unchallenged assertion about the small number of states imposing life sentences for crimes like his, we deem this factor to weigh in his favor—though not heavily so, given the large number of other states imposing lengthy prison sentences for Swint's crime.

*Weighing all three factors*

When all three factors are balanced against one another, we hold that Swint's hard 25 life sentence is not so disproportionate to his crime that it shocks the conscience or offends fundamental notions of human dignity. In short, the relative severity of Swint's punishment as compared to the punishments for the same crime in other jurisdictions does not convince us Swint's sentence is unconstitutional when weighed against the nature of Swint's crime, Swint's character, and the proportionality of his sentence with sentences for other Kansas crimes. Swint's hard 25 life sentence does not violate § 9.

26

*Swint's sentence does not violate the Eighth Amendment.*

The panel held Swint waived or abandoned his Eighth Amendment proportionality argument. *Swint*, 2013 WL 6839354, at *16. We consider that ruling first.

*Preservation*

To preserve an issue for appellate review, it must be more than incidentally raised in an appellate brief; it must be accompanied by argument and supported by pertinent authority or an explanation why the argument is sound despite the lack of authority or existence of contrary authority. *Gomez*, 290 Kan. at 866. In Swint's case, the panel held that he had failed to preserve his Eighth Amendment challenge because he did not brief how Eighth Amendment law might differ in his case from the § 9 analysis. *Swint*, 2013 WL 6839354, at *16.

We read Swint's brief as attempting to simultaneously make both his state and federal constitutional arguments in an effort to demonstrate they are controlled by the same or similar analytical framework. And Swint supports his Eighth Amendment claim with federal caselaw, which he cites in tandem with Kansas cases while addressing the factors he believes control both state and federal claims. Swint's argument may not prevail, as discussed below, but his brief contains more than a mere passing reference to the Eighth Amendment. We hold this issue is adequately presented for appellate review.

*Discussion*

"The concept of proportionality is central to the Eighth Amendment. Embodied in the Constitution's ban on cruel and unusual punishments is the 'precept of justice that punishment for crime should be graduated and proportioned to [the] offense.'" *Graham v.*

27

*Florida*, 560 U.S. 48, 59, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010) (quoting *Weems v. United States*, 217 U.S. 349, 367, 30 S. Ct. 544, 54 L. Ed. 793 [1910]). Proportionality claims under the Eighth Amendment fall into two general categories (1) challenges to the length of term-of-years sentences under the circumstances of a particular case; and (2) challenges involving categorical restrictions on certain sentencing practices. See *Graham*, 560 U.S. at 59; *State v. Williams*, 298 Kan. 1075, 1084, 319 P.3d 528 (2014) (discussing *Graham*). This case involves the former.

"When conducting an Eighth Amendment analysis to determine whether a term-of-years sentence is grossly disproportionate for a particular defendant's crime, a court begins by comparing the gravity of the offense and the severity of the sentence. This analysis may consider a particular offender's mental state and motive in committing the crime, the actual harm caused to the victim or to society by the offender's conduct, any prior criminal history, and a particular offender's propensity for violence. In the rare case in which this threshold comparison leads to an inference of gross disproportionality, the court should then compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions. If this comparative analysis validates an initial judgment that the sentence is grossly disproportionate, the sentence is cruel and unusual. [Citation omitted.]" *Woodard*, 294 Kan. at 720-21.

As to the "threshold comparison" of the gravity of the offense and harshness of the penalty, an inference of gross disproportionality will be raised only in rare cases. *Mossman*, 294 Kan. at 923. State legislatures have "considerable latitude" in making policy decisions regarding the severity of criminal sentences. 294 Kan. at 923. The rareness of cases in which sentences appear grossly disproportionate

"is illustrated by a series of cases in which the Court held a life sentence for a nonviolent theft or drug crime was not cruel and unusual punishment. *E.g., Lockyer v. Andrade*, 538 U.S. 63, 70, 77, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003) (sentence of two consecutive

28

prison terms of 25 years-to-life for third-strike conviction for stealing approximately $150 in videotapes); *Ewing* [*v. California*], 538 U.S. [11,] 28-31[, 123 S. Ct. 1179, 155 L. Ed. 2d 108 (2003)] (25 years-to-life sentence under three-strike provision for stealing approximately $1,200 of merchandise); *Harmelin* [*v. Michigan*], 501 U.S. [957,] 961, 996[, 111 S. Ct. 2680, 115 L. Ed. 2d 836 (1991)] (life sentence without possibility of parole for first felony offense, which was possession of more than 650 grams of cocaine); *Rummel v. Estelle*, 445 U.S. 263, 266, 285, 100 S. Ct. 1133, 63 L. Ed. 2d 382 (1980) (life sentence with possibility of parole, imposed under a Texas recidivist statute, for a defendant convicted of obtaining $120.75 by false pretenses [his third felony conviction], an offense normally punishable by imprisonment for 2 to 10 years); but see *Solem* [*v. Helm*]*,* 463 U.S. [277,] 296-97, 303[, 103 S. Ct. 3001, 77 L. Ed. 2d 637 (1983)] (life sentence without possibility of parole imposed on adult offender was 'significantly disproportionate' to the defendant's crime, which was predicated on a current offense of 'uttering a "no account" check' for $100 and the defendant's lengthy criminal history that included seven nonviolent felonies)." *Mossman*, 294 Kan. at 923.

And this court has further noted,

"A statement made by Justice Kennedy in his concurring opinion in *Harmelin* provides insight into the Court's view of the policy judgment inherent in a proportionality decision. He noted: '[A] rational basis exists for Michigan to conclude the petitioner's crime [of possessing a large quantity of cocaine] is as serious and violent as the crime of felony murder without specific intent to kill, a crime for which "no sentence of imprisonment would be disproportionate." [Citation omitted.]' *Harmelin,* 501 U.S. at 1004 (Kennedy, J., concurring). For purposes of our analysis, it is reasonable to substitute aggravated indecent liberties with a child as the crime referred to in that statement because the Supreme Court has observed that sex offenders represent a particularly serious threat in this country given that they are more likely than any other criminals to commit violent crimes following their release from prison. *McKune v. Lile,* 536 U.S. 24, 32-33, 122 S. Ct. 2017, 153 L. Ed. 2d 47 (2002)." *Mossman*, 294 Kan. at 923-24.

Swint's sentence is not grossly disproportionate to his crime given the court's suggestion in *Mossman* that no term of imprisonment might be grossly disproportionate to the crime of aggravated indecent liberties for Eighth Amendment proportionality purposes; the "particularly serious threat" sex offenders pose to society; and Swint's conduct in this particular case—taking advantage of a position of trust in the victim's life to commit more than one sexually violent crime against her. Swint's Eighth Amendment challenge must fail.

On the issues subject to our review, the judgment of the Court of Appeals, affirming in part and vacating in part the judgment of the district court, is affirmed.