NOT DESIGNATED FOR PUBLICATION

No. 120,688

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

REGINALD M. JOHNSON,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court, J. PATRICK WALTERS, judge. Opinion filed May 15, 2020.
Affirmed.

*Angela M. Davidson*, of Wyatt & Davidson, LLC, of Salina, for appellant.

*Lesley A. Isherwood*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before STANDRIDGE, P.J., LEBEN and BRUNS, JJ.

LEBEN, J.: Reginald Johnson was convicted of first-degree murder for shooting his common-law wife at their home in Wichita in 2007. In 2018, he moved for habeas-corpus relief, the second time he'd done so. That motion—like his first one—said that his court-appointed trial counsel had been constitutionally inadequate. The district court denied the motion without an evidentiary hearing.

On appeal, Johnson again claims ineffective assistance of his trial counsel, making several arguments about a psychological evaluation that he says his counsel should have

disclosed to him and introduced at trial, either to supplement the defense his counsel did make or to raise a different defense based on mental disease or defect. But the record conclusively shows that Johnson isn't entitled to relief because nothing in the report actually negates the critical facts leading to Johnson's conviction—that he intentionally shot and killed his wife. So his counsel wasn't ineffective for failing to disclose it to him or introduce it at trial. We therefore affirm the district court's decision to deny Johnson's habeas motion without a hearing.

FACTUAL AND PROCEDURAL BACKGROUND

To set the stage for a discussion of Johnson's current claims, we first review the proceedings that have taken place since Johnson was charged with first-degree murder in 2007. During his 2008 trial on that charge, Johnson didn't dispute that he had shot his wife in their house; instead, his trial attorney, Ken Newton, argued that Johnson was guilty of voluntary manslaughter, a less severe crime than first-degree murder. First-degree murder as charged in Johnson's case meant the killing of a person committed intentionally and with premeditation.

One way a person can commit voluntary manslaughter is to kill a person "knowingly" and "in the heat of passion." K.S.A. 2019 Supp. 21-5404; see *State v. Johnson*, 290 Kan. 1038, 1043-49, 236 P.3d 517 (2010). So Newton argued that Johnson was in a fragile psychological state and then snapped when his wife described details of her extramarital affair. As evidence of that psychological state, Johnson testified that he had intended to commit suicide before his wife arrived at their house and that he had blacked out during the shooting. Newton also presented testimony about Johnson's history of depression and suicidal thoughts. But Newton decided not to introduce a psychological report prepared by Dr. Molly Allen stating that a mental disease or defect could have, when viewed in a specific way, contributed to Johnson's crime. And according to Johnson, Newton never disclosed that report to him.

2

The jury ultimately rejected the voluntary-manslaughter argument and convicted Johnson of first-degree murder. Our Supreme Court affirmed that conviction in 2010. *Johnson*, 290 Kan. 1038. That concluded Johnson's direct appeal, the initial step of his challenge to his conviction.

After Johnson completed his direct appeal, he challenged the conviction in a habeas-corpus proceeding. Procedurally, that's done by a motion under K.S.A. 60-1507. Since Johnson's present claim was denied by the district court in part because he had brought a previous habeas motion, we will briefly review that first attempt. Johnson has not included the full record related to it in this appeal, but earlier opinions of this court describe what occurred. See *Johnson v. State*, No. 114,735, 2017 WL 3836912 (Kan App. 2017) (unpublished opinion), *rev. denied* 307 Kan. 987 (2018); *Johnson v. State*, No. 109,169, 2014 WL 1362929 (Kan. App. 2014) (unpublished opinion).

Johnson filed his first habeas motion in 2010, alleging ineffective assistance of counsel, prejudicial trial errors, and double-jeopardy and due-process violations. Johnson later filed an amended motion with more detail, but this court's opinions don't describe the contents of that amended motion and it's not in the record before us. 2014 WL 1362929, at *2. The district court denied his motion after holding a nonevidentiary hearing, but a panel of this court reversed that decision and sent the case back to the district court for an evidentiary hearing. 2014 WL 1362929, at *10.

While preparing for that hearing, Johnson's court-appointed appellate attorney received a copy of Dr. Allen's report. When the attorney showed that report to Johnson, he said it was the first time he'd seen it; Johnson said he had tried to get a copy from his trial attorney in 2012 and from the Sedgwick County District Court in 2013. In the report, Dr. Allen said that Johnson's mental health could have contributed to the killing.

After reviewing the report, Johnson argued at his evidentiary hearing that his trial attorney had been ineffective (1) by not investigating Johnson's mental health after reviewing Dr. Allen's report and (2) by not presenting a defense based on mental disease or defect at trial. Johnson also raised other ineffective-assistance claims, but they aren't relevant to the present appeal. According to our court's opinion, the district court "admitted testimony about Dr. Allen's report on whether Newton had conducted a proper investigation, but it did not allow any testimony about whether Newton should have raised a mental disease or defect defense because that issue had not been raised in Johnson's K.S.A. 60-1507 motion." 2017 WL 3836912, at *3. The district court then denied Johnson's habeas motion.

It's unclear why the district court found that Johnson's second claim, but not his first, went beyond the scope of his original habeas motion. Presumably, Johnson didn't raise *any* claims related to Dr. Allen's report in his original or amended habeas motion because he didn't get a copy of the report until 2015. But Johnson argued both claims on appeal. And our court considered the merits of Johnson's argument that his trial attorney should have raised a mental-disease-or-defect defense. After reviewing the record, including Dr. Allen's report, our court said that it could not second-guess Newton's strategic decision to pursue another defense after he had sufficiently investigated Johnson's mental health:

> "Newton testified that prior to trial, he requested the psychological evaluation of Johnson to determine the plausibility of putting on a mental disease or defect defense.
>
> "After Newton reviewed Dr. Allen's report, he chose not to proceed with that line of defense because Dr. Allen did not give a 'real definitive endorsement' of mental disease or defect. After reviewing the report, he did not contact Dr. Allen about her report or findings. Newton chose a different defense. Newton did not investigate the defense of mental disease or defect any further. Newton testified that he chose not to call Dr. Allen to testify because her recommendation was not strong enough to be successful. Newton

4

said he was looking for something more—her report seemed 'wishy-washy' to him. Newton made an informed, professional choice not to pursue that defense. We are in no place to second-guess his judgement at this point." 2017 WL 3836912, at *3.

The Kansas Supreme Court then declined further review; that ended the proceedings on Johnson's first habeas motion. 2017 WL 3836912, *rev. denied* 307 Kan. 987 (2018).

Johnson filed his second habeas motion—the one involved in this appeal—in June 2018. Johnson raised several ineffective-assistance claims against his trial attorney for the attorney's failure to raise a mental-disease-or-defect defense at trial based on Dr. Allen's report. The district court denied Johnson's motion without a hearing, finding that Dr. Allen's report wasn't exculpatory and that Johnson's claim was procedurally barred because it was untimely and successive. Johnson then appealed to our court.

ANALYSIS

When the district court denies habeas relief without holding a hearing, we independently review the motion and case file to determine whether they conclusively show that the prisoner wasn't entitled to relief. In doing so, we look to see whether the movant has set out specific factual allegations that would merit an evidentiary hearing. *Sola-Morales v. State*, 300 Kan. 875, 881, 335 P.3d 1162 (2014). Johnson asks us to find that he provided enough factual support to get an evidentiary hearing on his ineffective-assistance claims. So what Johnson needs to show on appeal is that he provided specific facts that, if proven at an evidentiary hearing, would be adequate to conclude that his trial attorney provided ineffective assistance.

On appeal, Johnson argues that his trial attorney should have presented a mental-disease-or-defect defense, saying that "[s]ufficient evidence indicated Mr. Johnson's shooting of his wife stemmed from a mental disease or defect." Our court addressed that

issue when Johnson appealed the district court's denial of his first habeas motion. See *Johnson*, 2017 WL 3836912, at *3-4. But the State hasn't argued in this appeal that Johnson's claim is barred by res judicata, the legal doctrine that prevents a litigant from raising issues that have previously been resolved by the courts. See *Woods v. State*, 52 Kan. App. 2d 958, Syl. ¶ 1, 379 P.3d 1134 (2016). And we decline to raise that issue on our own.

Johnson also makes two other arguments on appeal related to Dr. Allen's report: (1) that Dr. Allen's report should have been introduced to supplement his trial attorney's voluntary-manslaughter defense; and (2) that his trial attorney should have disclosed the report to him before trial. Johnson doesn't show that either of these arguments was raised before the district court; nor does he explain why he should be allowed to raise them for the first time on appeal.

The State doesn't address the merits of these arguments. It simply contends that two procedural hurdles preclude Johnson from bringing this habeas claim at all. Because Johnson filed an earlier K.S.A. 60-1507 motion, the State notes that he must show "exceptional circumstances" to prevent the dismissal of his motion as successive and an abuse of remedy. K.S.A. 2019 Supp. 60-1507(c); see *Littlejohn v. State*, 310 Kan. 439, 443-46, 447 P.3d 375 (2019). And because motions under K.S.A. 60-1507 must be filed within one year of the conclusion of the defendant's original appeal, Johnson must show that failure to consider his habeas claim—which he filed well past that deadline—would lead to "manifest injustice." K.S.A. 2019 Supp. 60-1507(f). The State says Johnson hasn't made either of these showings.

In the somewhat unique posture of this case, we are inclined to consider the merits of Johnson's appeal because Johnson claims that he wasn't able to get a copy of Dr. Allen's report until 2015—well after he had filed his initial K.S.A. 60-1507 motion.

In addition, the district court limited Johnson's use of the report during his first round of habeas proceedings.

We do recognize that an appellate court generally does not consider issues raised for the first time on appeal. *State v. Rizo*, 304 Kan. 974, 978, 377 P.3d 419 (2016). There are exceptions to this rule, including when considering the issue is necessary to serve the ends of justice or to prevent the denial of fundamental rights (such as the right to counsel). 304 Kan. at 978-79. Here, though, Johnson also fails to explain why this issue is properly before this court, as required by Supreme Court Rule 6.02(a)(5) (2020 Kan. S. Ct. R. Annot. 34). *State v. Swint*, 302 Kan. 326, 335-36, 352 P.3d 1014 (2015). Failure to comply with this rule also usually means that the court won't consider any claims raised for the first time on appeal. See 302 Kan. at 335-36. But the rules about claims raised for the first time on appeal are prudential, not jurisdictional, so we still may consider the merits of an issue raised for the first time on appeal. See *Rizo*, 304 Kan. at 979. Here, there is a viable argument that considering the issue is necessary to prevent the denial of the fundamental right to counsel, so we will address the merits of Johnson's new claims. See 304 Kan. at 978-79.

Considering the merits, then, to demonstrate that his counsel was ineffective, Johnson would have to show two things: (1) that his trial attorney's work was below minimum standards and (2) that the attorney's substandard work prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687-88, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *Mattox v. State*, 293 Kan. 723, Syl. ¶ 1, 267 P.3d 746 (2011). To show prejudice, Johnson would need to show that there was a reasonable probability that the jury would have reached a different result but for the substandard work by his attorney. *Breedlove v. State*, 310 Kan. 56, Syl. ¶ 3, 445 P.3d 1101 (2019). With that in mind, let's return to the three claims Johnson argues in this appeal.

The first is that his trial attorney should have introduced Dr. Allen's report as part of a defense based on a mental disease or defect. By statute, mental disease or defect is a defense to a crime only when it prevents the defendant from forming the culpable mental state that the crime requires. K.S.A. 22-3220; see *Kahler v. Kansas*, 589 U.S. ___, 140 S. Ct. 1021, 1025-26, ___ L. Ed. 2d ___ (2020). (We're citing to the criminal statutes in effect at the time Johnson killed his wife, though similar statutes remain today.) The culpable mental state for first-degree murder, the crime Johnson was charged with, was that the crime have been committed intentionally, meaning through conduct that was "purposeful and willful and not accidental." K.S.A. 21-3201(b). Significantly, though, Johnson's defense at trial wasn't a challenge to whether he shot his wife intentionally. Rather, Johnson argued for a voluntary manslaughter conviction that also required intentional conduct. The difference was that Johnson argued at trial that he acted in the heat of passion, not with premeditation. See *Johnson*, 290 Kan. at 1043-44.

Of course, the jury rejected Johnson's defense. It concluded that he shot his wife intentionally *and* with premeditation. And Johnson doesn't explain how Dr. Allen's report undermines either of those conclusions.

He highlights language in the report saying that "he could be said to have [had] a mental disease or defect that contributed to the crime in question." But he omits the rest of the paragraph, which details Johnson's depression, his tendency for dysfunctional relationships, and his unstable sense of self. Only after mentioning those specific mental-health issues did Dr. Allen say that "[*i*]*n this sens*e" Johnson could be said to have a mental disease or defect that contributed to shooting his wife:

> "'Mr. Johnson most likely has had an affective disorder, and a character disorder, the latter of which is characterized by an individual having chronically disturbed relationships with others. In Mr. Johnson's case, this means that he lacks a stable sense of self, and tends to be drawn to a chaotic and dysfunctional relationship with a primary

8

partner. *In this sense*, he could be said to have a mental disease or defect that contributed to the crime in question." (Emphasis added.) *Johnson*, 2017 WL 3836912, at *3.

The legal problem Johnson faces is that the legal defense of mental disease or defect doesn't work in that way. Being drawn to chaotic and dysfunctional relationships doesn't absolve someone of the legal responsibility for committing murder. And mental disease or defect may mean something different to a psychologist than it does as a legal defense to murder. Legally, Johnson would have a mental-disease-or-defect defense *only* if he lacked the ability to make the intentional act of shooting his wife intending to kill her. None of the psychological characteristics mentioned by Dr. Allen suggest that Johnson was unable to form the mental state that was then the basis of first-degree murder—intending to shoot his wife as a purposeful act. And the jury found that Johnson's act was both intentional and premeditated. As our court noted in the appeal from Johnson's first habeas claim: "Johnson does not explain how [Dr. Allen's] report or further investigation would have negated premeditation." 2017 WL 3836912, at *4.

In sum, Johnson has not shown that a mental-disease-or-defect legal defense was available to him. K.S.A. 22-3220 provided that this defense could succeed *only* if it showed that the defendant lacked a mental state required as an element of the charged offense. Johnson doesn't show how Dr. Allen's report shows a lack either of intentionality or premeditation, so his attorney's failure to present the report at trial isn't constitutionally deficient representation.

Johnson's next claim is that his trial attorney should have introduced Dr. Allen's report to supplement the defense that he did put on at trial—that Johnson was guilty of voluntary manslaughter but not first-degree murder. As we've already noted, both voluntary manslaughter and first-degree murder required an intentional act; Johnson's defense was that the act was done in the heat of passion, not with premeditation. See *Johnson*, 290 Kan. at 1043-44; *Johnson*, 2014 WL 1362929, at *2 ("The thrust of

Johnson's defense at trial was that he killed [his wife] in the heat of passion or upon a sudden quarrel, rendering the death a voluntary manslaughter."). But as we've just said, Dr. Allen's report doesn't undermine the jury's conclusion that Johnson killed his wife intentionally and with premeditation. Nor does it directly address Johnson's mental state at the time of the shooting; his trial attorney didn't perform deficiently by failing to use it to supplement his defense.

Johnson's final claim is that it was unreasonable for his trial attorney not to disclose Dr. Allen's report to him. Johnson knew, of course, that Dr. Allen had evaluated him, but says that he didn't receive a copy of the report until 2015, shortly before the evidentiary hearing on his first habeas motion. Even if we were to assume that the attorney *should* have disclosed the report to Johnson, we do not see how that would constitute inadequate representation under *Strickland* since no showing has been made that the use of the report at trial could have changed the trial's outcome. We see no basis to conclude that Johnson's trial attorney was constitutionally ineffective by not showing the report to Johnson.

We have reviewed Johnson's K.S.A. 60-1507 motion and the record before the district court. We find no factually supported allegation that Johnson's trial attorney performed deficiently, so we agree with the district court's decision to deny Johnson's ineffective-assistance claims without holding an evidentiary hearing.

We therefore affirm the district court's judgment.

10