(177 P.3d 972)
No. 96,879

STATE OF KANSAS, *Appellee,* v. MICHAEL W. SCOTT, *Appellant.*

Opinion filed February 22, 2008.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Gerald R. Kuckelman*, county attorney, and *Paul J. Morrison*, attorney general, for appellee.

Before MARQUARDT, P.J., GREEN and LEBEN, JJ.

GREEN, J.: Michael Scott appeals from his jury trial convictions and his sentences for two counts of the sale of cocaine within 1,000 feet of a school in violation of K.S.A. 2004 Supp. 65-4161(d) and K.S.A. 65-4107(b)(5). First, Scott contends that there was insufficient evidence for the jury to convict him of the two counts of sale of cocaine. Nevertheless, after reviewing the evidence in the light most favorable to the State, we conclude that there was sufficient

evidence to convict Scott of the charges. Next, Scott argues that the trial court erred by refusing to admit testimony at trial that the principal witness in the case was being criminally investigated for forging Scott's checks. We determine that such evidence was relevant and admissible to show the witness' bias and motive for testifying against Scott. Under the circumstances of this case, the failure to admit such evidence did not constitute harmless error. Because we are reversing Scott's convictions and remanding for a new trial, the remaining issues raised by Scott are moot and will not be addressed in this opinion. Accordingly, we reverse and remand for a new trial.

In August 2004, Nicky Soden approached Officer Terry Kelley about becoming an informant for the Atchison Police Department. Soden admitted that he had a problem with drugs but said that he wanted to "clean himself up." Soden told Kelley that if he became an informant, no one would want to deal with him, and he would get off of drugs. During his first interview with Kelley, Soden mentioned several names of people involved in selling drugs but did not mention Scott's name.

Over the next four months, Soden worked as an informant in several undercover drug buys. Soden agreed not to use any controlled substances during his period of association with the police department. Nevertheless, Soden showed up intoxicated with what Kelley believed was alcohol one time, and Kelley had to send him home. Soden also admitted that he used drugs a couple of times while working with Kelley. During the 4 months he worked as an informant, Kelley gave Soden approximately $470 for expenses such as groceries. Soden was provided with free housing and subsidized utilities while he was working as an informant. In addition, Scott presented evidence that an arrest warrant, which was issued for Soden in November 2004, was cleared in February 2005.

Soden first mentioned Scott's name around the end of September 2004. On October 12, 2004, Soden contacted Kelley and said that he was going to try to buy drugs from Scott. Kelley met with Soden, searched him and fit him with a listening device, gave him $40 to buy crack cocaine, and dropped him off in front of a school near Scott's house. Kelley watched Soden walk up a hill towards

Scott's house. It was dark outside, and Kelley could not see Soden when he arrived at Scott's house. Over the listening device, Kelley heard Soden knock on a door and say "Mike" when the door was answered. Kelley could hear Soden and another man talking.

Soden testified that when he arrived at Scott's house, he asked Scott to get him some crack cocaine. According to Soden, Scott said he needed to make a phone call. After Scott told Soden it would be about 30 minutes, Soden returned to Kelley's car. Kelley took Soden to the police station and searched him. Soden told Kelley that Scott and Scott's girlfriend were the only ones at the house. Approximately 25 minutes later, Kelley dropped Soden off near Scott's house.

Soden testified that when he returned to Scott's house, Scott made another telephone call and then went outside. Kelley saw Scott's car leave the house and return approximately 10 minutes later. Soden testified that Scott returned with the crack cocaine. Soden gave Scott the money and gave Scott a piece of the crack cocaine as Scott's pay for getting it. Kelley testified that he heard Soden ask for the other bag and state that he "got dogged" or cheated. When Soden returned to Kelley's car, Soden gave Kelley a package of crack cocaine. Kelley took Soden back to the police station, searched him, and took a written statement from him. Later testing revealed that the crack cocaine weighed .09 grams.

On November 27, 2004, Soden called and asked Kelley to pick him up at a church near Scott's house. When Kelley picked him up, Soden said that he was going to buy drugs from Scott that night. Kelley drove to a parking lot where he searched Soden, fit him with a listening device, and gave him $50 to purchase crack cocaine. Kelley dropped Soden off near Scott's house around 10:30 p.m. Soden testified that Scott went out the back door and returned with the crack cocaine. Soden gave Scott a share of the crack cocaine as his pay for getting it. Approximately 30 minutes after Kelley dropped him off, Soden returned to Kelley's car with a bag of crack cocaine. Later testing revealed that the crack cocaine weighed .25 grams.

Scott was charged with two counts of sale of cocaine within 1,000 feet of a school in violation of 2004 Supp. K.S.A. 65-4161(d). At

trial, Scott testified that he and Soden had been friends and had daughters around the same age. According to Scott, Soden borrowed Scott's car several times and used some of Scott's tools. In addition, Soden admitted that he had borrowed money from Scott but had never repaid him. According to Scott, his friendship with Soden became strained when he asked him to repay the loaned money. Scott testified that he had loaned Soden between $1,000 and $3,000.

Scott testified that he had never sold crack cocaine. Scott admitted that he had a problem with crack cocaine in 2003 but testified that Soden was the one who would get it for him. According to Scott, Soden came to his house on October 12, 2004, with $40 and asked Scott to get him some crack cocaine. Scott told Soden that he could not get any crack, gave him his money back, and told him to leave his house. Nevertheless, Soden stayed at Scott's house. Scott testified that he eventually went to the store to get bread for his lunch but the store was closed.

Scott testified that Soden returned to his house on Thanksgiving weekend in 2004. When Soden came inside the house, he was confronted with several people who had previously loaned him money. When they began asking for their money, Soden asked to use Scott's telephone. According to Scott, Soden left but then returned to the house to call for a ride. Soden eventually left when Scott and his girlfriend left the house. Scott denied selling crack cocaine to Soden.

The audiotapes from the listening device worn by Soden at the controlled buys in October and November 2004 were never introduced at trial. Kelley testified that he erased the tape covering Soden's initial visit to Scott's house on October 12, 2004, because of limited time available on the tape. Although it appears that there was an audiotape of the second visit to Scott's house on October 12, 2004, the State never introduced it into evidence at trial. Before trial, both parties indicated to the trial court that the audiotape was hard to understand. No audiotape was available for the November 27, 2004 controlled buy, because Kelley had accidentally switched the device to the monitor setting instead of the record setting.

The jury found Scott guilty of the two counts of sale of cocaine. The trial court sentenced Scott to a controlling sentence of 59 months in prison.

## I. Sufficiency of the Evidence

First, Scott contends that there was insufficient evidence for the jury to convict him of the two counts of sale of cocaine. When a defendant challenges the sufficiency of the evidence in a criminal case, an appellate court must consider all of the evidence viewed in a light most favorable to the prosecution and determine whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Parker*, 282 Kan. 584, 597, 147 P.3d 115 (2006).

In arguing that there was insufficient evidence, Scott attacks the credibility of the witnesses and points to inconsistencies in the evidence. Specifically, Scott maintains that Soden's and Kelley's testimonies were untrustworthy, that there were flaws in the police procedures for the drug buys, and that the evidence showed that Soden had a motive to falsely implicate Scott. Nevertheless, it is for the jury to decide the credibility of witnesses and to resolve inconsistencies in the evidence. See *State v. Donaldson*, 279 Kan. 694, 701, 112 P.3d 99 (2005). As an appellate court, we do not weigh conflicting evidence or pass on the credibility of witnesses. Further, we resolve all questions of credibility in favor of the State. *State v. Kuykendall*, 264 Kan. 647, 651, 957 P.2d 1112 (1998).

Here, the State presented evidence that on two separate occasions, Soden went to Scott's house and gave money to Scott for crack cocaine. Scott then left his house and got the crack cocaine for Soden. When Scott returned to his house, he gave the crack cocaine to Soden. As payment for Scott getting the crack cocaine, Soden gave Scott a portion of the crack cocaine. Scott's house was located less than 1,000 feet from a school. A review of the evidence in the light most favorable to the State leads to the conclusion that there was sufficient evidence to convict Scott of the sale of cocaine within 1,000 feet of a school.

## II. Admission of Evidence Concerning Forgery Investigation

Next, Scott contends that the trial court erred when it refused to admit testimony at trial that Soden was being criminally inves-

tigated for forging Scott's checks. Scott maintains that such evidence was essential to his ability to present a full and complete defense.

Under our state and federal Constitutions, a defendant is entitled to present the theory of his or her defense. The defendant's fundamental right to a fair trial is violated if relevant, admissible, and noncumulative evidence which is an integral part of the theory of the defense is excluded. *State v. Lawrence*, 281 Kan. 1081, 1085, 135 P.3d 1211 (2006).

Nevertheless, the defendant's right to present his or her defense is subject to statutory rules and case law interpretation of the rules of evidence and procedure. *Lawrence*, 281 Kan. at 1085. An appellate court's first consideration when reviewing a trial court's decision concerning the admission of evidence is whether the evidence is relevant. Once relevance is established, an appellate court must apply the evidentiary rules governing the admission and exclusion of evidence as a matter of law or in the exercise of the trial court's discretion, depending on the contours of the evidentiary rule question. When the issue involves the adequacy of the legal basis for the trial court's decision, the issue is reviewed using a de novo standard. *State v. Gunby*, 282 Kan. 39, 47-48, 144 P.3d 647 (2006).

Here, evidence concerning the alleged forgery came out at the preliminary hearing when Soden admitted that he had signed Scott's name to two checks and had cashed them in March and April 2004. Soden testified that Scott was at home at the time and had told him to write the checks. Nevertheless, defense counsel asserted that Scott was in custody on a parole violation when the checks were written and could not have authorized Soden to write the checks.

Before trial, defense counsel asked the trial court to allow to him present testimony from a law enforcement officer about an ongoing forgery investigation involving Soden and the checks. The trial court denied defense counsel's request on the ground that only evidence of a *conviction* is allowed for impeachment purposes, not evidence of an investigation. Defense counsel then asked the trial court if he could question Soden concerning his failure to respond

to an inquiry directed to him by the officer investigating the forgery. The trial court again denied defense counsel's request on the ground that there had been only an investigation. The trial court told defense counsel that he could characterize the checks as a debt between Scott and Soden to show bias or ill will in that context.

Scott contends that evidence of the forgery investigation was integral to his defense because it would establish a motive for Soden to falsely implicate him in a crime. Scott further argues that this evidence was relevant to show Soden's bias against Scott and that it discredited Soden's testimony.

K.S.A. 60-420, which allows a party to attack or support the credibility of a witness, states:

"Subject to K.S.A. 60-421 and 60-422, for the purpose of impairing or supporting the credibility of a witness, any party including the party calling the witness may examine the witness and introduce extrinsic evidence concerning any conduct by him or her and any other matter relevant upon the issues of credibility."

One of the methods or techniques for attacking the credibility of a witness is to show partiality, including bias, motive, and interest in the outcome. See Barbara, Lawyers Guide to Kansas Evidence § 3.1, p. 59 (5th ed. 2007). Our Supreme Court has held: "Bias, interest, or improper motives of a witness may always be shown in order to place the witness' testimony in proper perspective." *State v. Bowman*, 252 Kan. 883, Syl. ¶ 1, 850 P.2d 236 (1993). "The cross-examiner should have wide latitude in establishing partiality, bias, motive or interest. Matters of inquiry here are not considered collateral hence the cross-examiner may introduce extrinsic evidence unless the witness admits the fact or event." Barbara, § 3.1, p. 60. "[E]vidence of bias or prejudice of a witness is relevant and may be shown on cross-examination or in rebuttal or by other witnesses or evidence. 81 Am. Jur. 2d, Witnesses § 547." *Lindquist v. Ayerst Laboratories, Inc.*, 227 Kan. 308, 315, 607 P.2d 1339 (1980).

Nevertheless, arguing that the trial court properly denied Scott's request to introduce evidence of the forgery investigation, the State cites *State v. Handley*, 234 Kan. 454, 673 P.2d 1155 (1983), and *State v. Sanders*, 263 Kan. 317, 949 P.2d 1084 (1997). The State's

reliance on these two cases is misplaced. For example, neither *Handley* nor *Sanders* involved a situation where the evidence sought to be introduced showed a bias on the part of the witness either for or against the defendant. In *Handley*, the defendant learned after trial that the complaining witness had pled guilty to misdemeanor theft the day after trial. On appeal, the defendant argued that he should receive a new trial because the State with-held information about the witness' criminal history. Our Supreme Court rejected the defendant's argument, stating that "[e]vidence of a pending charge against a witness, which has not resulted in a conviction, is inadmissible to impeach the witness' credibility. K.S.A. 60-421 specifically requires a conviction before evidence of a crime is admissible for that purpose." 234 Kan. 454, Syl. ¶ 9.

In *Sanders*, our Supreme Court upheld the trial court's decision to not allow the defense to cross-examine a police detective about his prior diversion for a theft charge. Our Supreme Court held that the defendant had not presented any credible argument that the evidence was admissible for any purpose other than to impeach the officer's character trait of veracity. As a result, the evidence must be excluded under K.S.A. 60-422(d), which prohibits the ad-missibility of evidence of specific instances of a witness' conduct relevant only as tending to prove a trait of the witness' character. Our Supreme Court rejected the defendant's argument that the trial court's ruling unconstitutionally denied him his right to con-front and cross-examine Lawson, prevented him from presenting his defense, and precluded him from receiving a fair trial. Recog-nizing that the defendant had failed to show that the evidence had any bearing upon the officer's motivation for testifying in the case, our Supreme Court held:

"[The defendant] has failed to show the evidence he sought to cross-examine [the officer] about had any bearing upon [the officer's] motivation for testifying in this case. [The defendant] simply wanted to use this evidence to attack [the officer's] credibility, thereby impeaching his testimony. Restricting such cross-examination in no way deprived [the defendant] of his constitutional right to con-front witnesses. As no error, constitutional or otherwise, was committed in the exclusion of these questions pursuant to our rules of evidence, this issue fails." 263 Kan. at 321.

Here, unlike *Handley* and *Sanders*, Scott was not attempting to generally impeach Soden's credibility. Rather, the evidence that Scott sought to introduce was to show Soden's bias against him and Soden's motivation to testify against him. The facts surrounding the forgery investigation displayed the contentious relationship that existed between Scott and Soden, the principal witness in this case. Soden possibly took Scott's checks and cashed them without Scott's permission several months before the alleged cocaine sales took place in this case. Although Scott and Soden had been good friends for several years, their friendship had turned so sour that Scott reported Soden to law enforcement for forging his checks. Soden then became the subject of a forgery investigation by law enforcement. By bringing out evidence that Soden was a suspect in a criminal investigation where Scott was the victim, the defense could show a bias by Soden and a motivation for testifying falsely against Scott in order to send him to prison. As a result, this evidence had a direct bearing on Scott's defense: that he did not sell the cocaine as Soden asserted he did.

As stated earlier, if a witness has an interest in the outcome, or is prejudiced, hostile, or sympathetic, the witness may be impeached by having these matters exposed to the jury. Any doubt on this point vanishes when we consider several other decisions by our Supreme Court. In *State v. Bowman*, 252 Kan. 883, 850 P.2d 236 (1993), our Supreme Court upheld the trial court's decision to allow the State to cross-examine a defense witness about her prior conviction for obstruction of official duty. The witness, who lived with the defendant, had been convicted of obstruction of official duty based on her taking shoes with bullets hidden inside to the defendant in jail. On appeal, the defendant argued that the evidence was irrelevant and inadmissible under K.S.A. 60-421 because it was not a crime of dishonesty or false statement. Nevertheless, our Supreme Court upheld the admission of the evidence, determining that the evidence of how far the witness would go to help the defendant was relevant and was admissible to show relationship and bias. See also *State v. Loveland*, 8 Kan. App. 2d 196, 199-200, 653 P.2d 472 (1982), *rev. denied* 232 Kan. 876 (1983) (upholding admission of cross-examination testimony from defense

witness that he had "done drugs" with defendant where "the testimony was elicited to illustrate the witness' social relationship with defendant which would, in turn, indicate bias or prejudice.").

In *State v. Wesson*, 247 Kan. 639, 802 P.2d 574 (1990), *cert. denied* 501 U.S. 1236 (1991), the State attempted to introduce evidence that a defense witness had shared a jail cell with the defendant in order to show that based upon a relationship established while sharing a cell with the defendant, the witness was biased. The trial court allowed the State to bring out this evidence during cross-examination only if the State referenced the least serious crime for which the witness was being held in jail. The defendant argued that the State was attacking the witness' credibility on the basis of a crime with which he had been charged but not convicted. On appeal, our Supreme Court upheld its interpretation of K.S.A. 60-421 in *Handley* but determined that the statement of law from *Handley* was not properly applied to the facts of its case. In affirming the trial court's ruling, our Supreme Court looked to K.S.A. 60-420. Our Supreme Court held that the State was not attempting to impeach the witness' credibility under K.S.A. 60-421 but was trying to establish that the witness was biased based on his relationship with the defendant. Our Supreme Court held that the evidence was not prohibited by K.S.A. 60-421.

In *Bowman*, *Loveland*, and *Wesson*, the State was allowed to bring in evidence of a relationship between the defendant and a defense witness to show that the defense witness was biased towards the defendant. Similarly, in *State v. Harden*, 206 Kan. 365, 377, 480 P.2d 53 (1971), our Supreme Court held that in order to show the bias of a witness, it was proper for the State to show the close relationship between the witness and the defendant by their living together. Conversely, in order to show that Soden, the State's principal witness, was biased against him, Scott should have been allowed to bring in evidence of his contentious relationship with Soden.

The State, by citing *Handley*, seems to focus on the fact that the forgery investigation against Soden had not resulted in a conviction and was inadmissible under K.S.A. 60-421. Nevertheless, other jurisdictions have recognized that although a criminal conviction is

required to generally impeach a witness, evidence that a witness has been arrested or charged with a crime is admissible to show bias, interest, or motive of the witness to testify falsely. In *People v. Triplett*, 108 Ill. 2d 463, 475, 485 N.E.2d 9 (1985), the Illinois Supreme Court held that "although evidence of an arrest or indictment is not admissible to impeach credibility generally, it is admissible to show that the witness' testimony may be influenced by bias, interest, or motive to testify falsely." In *Gutierrez v. State*, 681 S.W.2d 698, 706 (Tex. App. 1984), the Texas Court of Appeals stated that "[g]enerally, unadjudicated criminal offenses may not be used to impeach a witness in a criminal case; however, evidence of pending charges against the witness is admissible for the limited purpose of showing bias, prejudice, interest, and motive of the witness in testifying as he did. [Citation omitted.]"

Similarly, in *Bowman, Loveland,* and *Wesson,* part of the relationship and bias evidence in all three of these cases included evidence of prior criminal activity by the witness, which seemingly would have been inadmissible if the State were attempting to use such evidence to generally impeach the witness' credibility under K.S.A. 60-421. Nevertheless, our Supreme Court held that the evidence was properly admitted to show bias of a witness.

Here, while evidence of the forgery investigation against Soden was inadmissible under K.S.A. 60-421 for general impeachment purposes, the evidence was admissible to show Soden's testimony might be influenced by bias or a motive to testify falsely. The *Triplett* court held that cross-examination to show bias, interest, or motive to testify falsely is a matter of right. 108 Ill. 2d at 475. When showing bias, interest, or motive, " 'the evidence used must give rise to the inference that the witness has something to gain or lose by his testimony' and, therefore, the evidence used must not be remote or uncertain. [Citations omitted.]" 108 Ill. 2d at 475-76. Here, the evidence concerning the forgery investigation could establish an incentive for Soden to testify falsely against Scott. By testifying against Scott and sending him to prison on the cocaine charges, Soden could possibly avoid the debt he owed to Scott and cast doubt on Scott's claim that he had not given Soden permission to sign and cash his checks.

*Other Evidence Presented at Trial*

Nevertheless, the State contends that Scott was able to impeach Soden at trial and to show Soden's bias against him. The State points out that Scott presented evidence that Soden received money from law enforcement, that he was provided with housing, that the police failed to execute an arrest warrant against Soden, that Soden owed money to Scott, and that Soden used drugs and alcohol while working as an informant. Thus, the State contends that Soden was able to present his theory of the case and was not denied his right to a fair trial.

Nevertheless, none of the evidence pointed to by the State showed the extent of the contentious relationship that existed between Scott and Soden. The friendship had soured to the extent that Soden possibly cashed Scott's checks without his permission and Scott was willing to turn his friend in to the police. Here, Soden was the principal witness used to convict Scott of the charges. Soden was the only witness who could identify Scott as the person who had gotten him the crack cocaine. His credibility was vitally important in this case.

Although the extent of cross-examination of a witness is generally in the discretion of the trial court, "a more searching examination is to be allowed of a witness who is a party principal," and "where the determination of the main issue of fact must largely depend upon the credence to be given the testimony of a litigant witness a wider range of cross-examination should be allowed than is usually permitted in the cross-examination of witnesses in general." *State v. Rowland*, 172 Kan. 224, 229, 239 P.2d 949 (1952). " 'The general rule is that a witness may be cross-examined for the purpose of disclosing his interest in the action, his hostile feeling, and the extent thereof, in order that the jury may determine the weight and credibility it will accord all, or any portion, of his testimony.' [Citation omitted.]" *Rowland*, 172 Kan. at 229. Because Soden was a critical witness for the State, Scott should have been allowed to cross-examine Soden or to bring in extrinsic evidence of what appeared to be the strongest motive for Soden to implicate Scott in the crimes.

The evidence of the alleged forgery was relevant and was admissible to show the contentious relationship between Soden and Scott and Soden's bias against Scott. In *Davis v. Alaska*, 415 U.S. 308, 316, 39 L. Ed. 2d 347, 94 S. Ct. 1105 (1974), the United States Supreme Court held:"The partiality of a witness is subject to exploration at trial, and is 'always relevant as discrediting the witness and affecting the weight of his testimony.' [Citation omitted.]" See also *State v. Matejka*, 186 Neb. 454, 456-57, 183 N.W.2d 917 (1971) (Testimony that the defendant had previously been physically and verbally abused by police officers testifying against him should have been admitted into evidence to show their bias and prejudice against the defendant.). As a result, the trial court should have allowed Scott to present evidence or to cross-examine Soden about the alleged forgery.

*Harmless Error*

Although the failure to allow a party to cross-examine a witness about a possible bias or motivation for testifying is error, the error may be harmless and does not automatically result in reversal. *State v. Jacques*, 270 Kan. 173, 182, 14 P.3d 409 (2000). When determining whether a trial court's refusal to allow cross-examination of a witness about possible bias or motivation for testifying was harmless, an appellate court considers the following factors: "(1) the importance of the witness' testimony in the prosecution's case; (2) whether the testimony was cumulative; (3) the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points; (4) the extent of the cross-examination otherwise permitted; and (5) the overall strength of the prosecution's case. [Citations omitted.]" *State v. Jacques*, 270 Kan. at 182.

As discussed previously, Soden's testimony was vitally important in this case as he was the only witness who could identify Scott as the person who got the crack cocaine for him. Although Kelley was able to testify about his surveillance of the transactions, he was not able to positively identify Scott as the person who sold Soden the crack cocaine. There were no surveillance tapes of the transactions introduced at trial. Although Scott was allowed to cross-examine Soden about the money that he owed to Scott and the benefits that

Soden received for working as an informant, Scott was not allowed to cross-examine Soden or to present evidence about what appeared to be the strongest motive for Soden to testify against Scott. Soden's testimony provided the strongest evidence against Scott. If Scott were able to establish Soden's bias or a motive to falsely implicate Scott in the crimes, it cannot be said beyond a reasonable doubt that the rest of the State's evidence was so strong that the jury would have still convicted Scott of the crimes. Therefore, the failure to allow Scott to bring out evidence of the forgery investigation was reversible error in this case.

### Scott's Remaining Arguments

Finally, Scott raises the following three arguments: (1) that the trial court failed to fully consider his ineffective assistance of counsel claims concerning his trial counsel's conduct at trial; (2) that his constitutional rights were violated when he was sentenced to the upper number in the appropriate grid box; and (3) that the trial court failed to make the necessary findings before ordering him to reimburse attorney fees to the Board of Indigents' Defense Services (BIDS). Because we are reversing Scott's convictions and remanding for a new trial, these remaining issues are moot. Any opinion on these remaining issues would be advisory only. As an appellate court, we do not decide moot questions or render advisory opinions. *Skillett v. Sierra*, 30 Kan. App. 2d 1041, Syl. ¶ 1, 53 P.3d 1234, *rev. denied* 275 Kan. 965 (2002).

Reversed and remanded for a new trial.