NOT DESIGNATED FOR PUBLICATION

No. 111,923

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

ELGIN RAY ROBINSON,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.


MEMORANDUM OPINION

Appeal from Sedgwick District Court; J. PATRICK WALTERS, judge. Opinion filed March 25, 2016. Affirmed.

*Michael P. Whalen* and *Krystle M.S. Dalke*, of Law Office of Michael P. Whalen, of Wichita, for appellant.

*Lesley A. Isherwood*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before ARNOLD-BURGER, P.J., ATCHESON, J., and WALKER, S.J.


*Per Curiam*:  The Sedgwick County District Court summarily denied Defendant Elgin Ray Robinson's habeas corpus challenge to his convictions for capital murder and other crimes arising out of the death of his pregnant, 14-year-old girlfriend. On appeal, Robinson has shown no material error in that ruling. We, therefore, affirm.

1

## FACTUAL AND PROCEDURAL HISTORY

In 2006, Robinson was 20 years old and represented himself to be an up and coming music and events promotor in the Wichita area. He and C.B., the murder victim, had an ongoing sexual relationship. C.B.'s body was found in a shallow grave in rural Butler County. C.B. had been strangled; she was in the very late stages of a pregnancy. The State prosecuted Robinson on the theory he had recruited Everett Gentry to kill C.B. According to the State's theory, Robinson feared that after C.B. gave birth, he would be identified as the father of the child in a paternity proceeding and then prosecuted for statutory rape because of C.B.'s age. See K.S.A. 21-3502(a)(2) (rape includes sexual intercourse with person under 14 years of age).

During the jury trial of the criminal charges, the State presented evidence that Gentry hired Theodore Burnett to help him kill C.B. Gentry, who knew C.B., lured her into a car with Burnett on the pretense they were taking her to see Robinson. Instead, they eventually drove from Wichita to a remote area in Butler County. Either Gentry or Burnett strangled C.B., and the two then buried her body. The grave was discovered about a week later. Robinson was in the Kansas City area when Gentry and Burnett killed C.B.

Gentry testified as a State's witness and told the jurors Robinson agreed to pay him $1,000 to help kill C.B. Testifying in his own defense, Robinson admitted having a sexual relationship with C.B. but denied any part in her death. The jury convicted Robinson of capital murder, rape, aggravated kidnapping, aggravated indecent liberties with a child, and violation of an order for protection from abuse. In a bifurcated penalty proceeding, the jury could not unanimously agree that Robinson should receive the death penalty. The district court imposed a controlling sentence of life in prison without parole plus 247 months. Robinson filed a direct appeal. The Kansas Supreme Court affirmed the convictions and sentence. *State v. Robinson*, 293 Kan. 1002, 1006, 270 P.3d 1183 (2012).

The court's decision contains a detailed account of the trial evidence that we do not repeat here. See 293 Kan. at 1006-12.

As permitted in K.S.A. 60-1507, Robinson filed a motion in the district court challenging his trial as unfair and the representation by his trial lawyers as inadequate, thereby violating his constitutional rights. The district court appointed a lawyer to represent Robinson on the 60-1507 motion. The lawyer filed various submissions on Robinson's behalf, including an amended motion. And Robinson personally continued to file papers outlining claims for relief. The district court appointed substitute counsel for Robinson during the 60-1507 proceedings. The district court denied the 60-1507 motion after a nonevidentiary hearing. Robinson has timely appealed that ruling.[1]

[1]The district court's journal entry denying Robinson's 60-1507 motion states the ruling was based on "the files and records of the [criminal] case." The record on appeal, however, includes a transcript of the district court's nonevidentiary hearing at which lawyers for Robinson and the State presented argument. As we discuss, the discrepancy is of no particular legal significance.

LEGAL ANALYSIS

*Legal Precepts Governing Habeas Corpus Motions*

Upon receiving a 60-1507 motion, a district court has three options. The district court can dismiss the motion after reviewing it and the record in the criminal case. *Bellamy v. State*, 285 Kan. 346, 353, 172 P.3d 10 (2007). But when "a motion . . . presents a substantial question of law or triable issue of fact, the court shall appoint" a lawyer to represent the petitioner. Supreme Court Rule 183(i) (2015 Kan. Ct. R. Annot. 273). After appointing a lawyer, the district court then has two choices. It may conduct a preliminary hearing during which lawyers for the State and for the petitioner present legal argument and otherwise address whether the circumstances call for a full evidentiary

3

hearing. *Bellamy*, 285 Kan. at 354. Or it may bypass the preliminary hearing and hold a full evidentiary hearing. See 285 Kan. at 353-54.

If a district court dismisses a 60-1507 motion on the papers without a hearing, the appellate court reviews that determination anew and without any deference. 285 Kan. at 354. Likewise, if the district court holds a nonevidentiary hearing and then denies the motion, the reviewing court affords the ruling no deference. *Barr v. State*, 287 Kan. 190, 196, 196 P.3d 357 (2008). Since the district court did not hear testimony or receive other evidence regarding Robinson's motion, we exercise unlimited review.

Accordingly, we put aside Robinson's complaint about the adequacy of the district court's findings and conclusions, which essentially mirror the State's submission. Even assuming there were problems with them, we are not bound by them nor do we give them any particular weight in arriving at our determination of the issues on appeal. In reviewing the remaining issues, we group them to facilitate our discussion, adding facts as necessary.

Before turning to the issues, we mention some general principles that guide habeas corpus proceedings. First, the habeas corpus challenge cannot be used as a substitute for a direct appeal, so issues that were or could have been presented during that process typically cannot be raised in a 60-1507 motion absent exceptional circumstances. *State v. Kelly*, 291 Kan. 868, 872, 248 P.3d 1282 (2011). Constitutionally inadequate legal representation may provide such a circumstance. See *Bledsoe v. State*, 283 Kan. 81, 88-89, 150 P.3d 868 (2007). To satisfy that standard, thus demonstrating a violation of the right to effective assistance of counsel guaranteed in the Sixth Amendment to the United States Constitution, the petitioner must show his or her representation in the direct criminal case fell below an objective standard of reasonableness resulting in legal prejudice, meaning there probably would have been a different outcome had the representation been adequate. *Strickland v. Washington*, 466 U.S. 668, 687-88, 694, 104

4

S. Ct. 2052, 80 L. Ed. 2d 674 (1984); see *Chamberlain v. State*, 236 Kan. 650, Syl. ¶¶ 3, 4, 694 P.2d 468 (1985) (adopting and stating *Strickland* test for ineffective assistance); see also *Haddock v. State*, 282 Kan. 475, 512-13, 146 P.3d 187 (2006) (stating *Strickland* test and *Chamberlain* standard of review). As both the United States Supreme Court and the Kansas Supreme Court have noted, review of the representation should be deferential and hindsight criticism tempered lest the evaluation of a lawyer's performance be unduly colored by lack of success notwithstanding demonstrable competence. See *Strickland*, 466 U.S. at 689-90; *Holmes v. State*, 292 Kan. 271, 275, 252 P.3d 573 (2011). Rarely should counsel's representation be considered substandard when he or she investigates the client's circumstances and then makes a deliberate strategic choice among multiple options. *Strickland*, 466 U.S. at 690-91. The *Strickland* test guides review of both trial and appellate advocates' handling of criminal cases. See *Miller v. State*, 298 Kan. 921, 929-30, 318 P.3d 155 (2014) (applying *Strickland* test to performance of lawyer handling direct appeal).

In general, the courts look at a lawyer's overall performance in representing a criminal defendant in determining whether the Sixth Amendment right to counsel has been satisfied, meaning that a minor mistake or even a number of minor mistakes do not breach that duty. See *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 791, 178 L. Ed. 2d 624 (2011); *Kimmelman v. Morrison*, 477 U.S. 365, 386, 106 S. Ct. 2574, 91 L. Ed. 2d 305 (1986); *Bland v. Hardy*, 672 F.3d 445, 450 (7th Cir. 2012) ("[T]he question under *Strickland* is not whether the lawyer made a mistake, even a serious one; it is whether the lawyer's *overall* performance was professionally competent."). But a single error causing sufficiently substantial legal harm to the defendant to call into question an adverse outcome at trial or on appeal will suffice. See *Miller*, 298 Kan. at 938-39.

Without an evidentiary hearing at which the lawyer representing the defendant in the direct criminal case testifies, the courts reviewing a habeas corpus motion may not be able to readily assess the strategic considerations that affected decisions the defendant has

attacked as reflecting inadequate representation. A court considering a 60-1507 motion can, nonetheless, deny relief if the defendant is unable to show the lawyer's actions had a material impact on the outcome of the direct criminal case even if the representation were constitutionally deficient. *Walker v. State*, No. 109,585, 2014 WL 3843084, at *5 (Kan. App. 2014) (unpublished opinion); *Oliver v. State*, No. 106,532, 2013 WL 2395273, at *5 (Kan. App.) (unpublished opinion), *rev. denied* 298 Kan. 1203 (2013). In other words, inept lawyering alone does not warrant relief in a 60-1507 proceeding.

*Robinson's Contentions on Appeal*

1. Robinson first contends his trial lawyers' representation constitutionally faltered in attacking Gentry's credibility. The lawyers argued that Gentry killed C.B. on his own initiative acting on either of two diametrically opposite motives. The evidence at trial indicated Gentry and Robinson had a falling out well before C.B.'s murder. As a result of their disagreement, Robinson effectively banished Gentry from his entertainment business. The lawyers suggested, on the one hand, Gentry sought to ingratiate himself to Robinson after Robinson expressed concern that he might be prosecuted for statutory rape when C.B. delivered their child. That is, killing C.B. and disposing of her body eliminated that problem for Robinson—for which he would be grateful to Gentry. On the other hand, the lawyers also suggested Gentry might have killed C.B. to exact revenge against Robinson because of their fractured association.

Robinson now contends that offering the jurors conflicting motives for Gentry to have killed C.B. on his own amounted to constitutionally inadequate representation. He says the lawyers should have investigated deeper to develop evidence supporting one motive or the other. But the argument fails because Robinson has not pointed to specific evidence the lawyers should have uncovered and presented during trial. So the argument is wholly speculative and hypothetical. It simply supposes there might be such evidence somewhere out there. That's, at best, wishful thinking. And wishful thinking is

6

insufficient to show prejudice satisfying the second part of the *Strickland* test. Robinson cannot establish that had his trial lawyers done more investigation of Gentry's motive, it would have made any difference at trial. Robinson has not demonstrated there would have been any additional evidence for the jurors to have considered. The district court, therefore, did not err in summarily dismissing the argument.

In a related argument, Robinson contends Gentry had another reason to act on his own in killing C.B.—he believed he might have been the father of her child. In turn, Gentry feared that *he* would face rape charges should C.B. give birth. Robinson points to a recorded statement Bridget Bush gave law enforcement officers about 2 months after the murder in which she says Jay Gutta, Gentry's roommate, recounted being at a meeting during which Gentry said he was the father of C.B.'s child and wanted C.B. dead to avoid being prosecuted for rape. Robinson now asserts his lawyers should have done something with the information Bush gave the police.

Bush could not have testified at trial to what Gutta purportedly told her, since that would be inadmissible hearsay. Had Gutta been called as a witness, he could have recounted Gentry's statements at the meeting because Gentry testified during Robinson's trial. See K.S.A. 60-460(a) (out-of-court statement of person present and available for cross-examination may be admitted as exception to hearsay exclusion). We needn't plumb any more exotic hearsay exceptions as possible bases that would have permitted Gutta's testimony. Given the record on appeal, we have no idea if Robinson's trial lawyers investigated this information and found it useless because they couldn't locate Gutta or they considered it tactically unproductive because they did find Gutta and he denied any such meeting with or statement by Gentry. Conversely, the lawyers simply may have overlooked or ignored the police report.

Robinson, however, makes no headway at this point as a result of that void in the record. In support of his 60-1507 motion, he has presented nothing to suggest any

7

investigation of Bush's statement would have yielded evidence that might have been used at trial, let alone possibly swayed the jurors to a different result. To get any traction now, Robinson would have had to come forward either with something directly from Gutta, such as an affidavit or declaration, essentially confirming that he could have been easily found before Robinson's trial and would have testified for the defense or with other entirely independent admissible evidence supporting the alternative motive for Gentry to have killed C.B. Absent that showing, Robinson has failed to establish any need for a hearing on his motion. Even if his lawyers were to admit they ignored Bush's statement, Robinson offers nothing to suggest that failure would have deprived him of evidence that could have been admitted during his trial. That's insufficient to warrant a hearing on a 60-1507 motion, let alone relief. Again, the district court did not err in summarily rejecting Robinson's argument.

2. Robinson next contends his trial lawyers were constitutionally ineffective for stipulating at trial that C.B. called him numerous times in the hours just before her death. At trial, Robinson introduced his own telephone records to show that the calls were not answered, meaning the two did not speak that evening. Robinson also testified to the lack of communication. Although the stipulation itself was arguably incomplete in the sense it permitted an inference that C.B. actually spoke with Robinson by telephone shortly before her murder when that inference was disputed in the evidence, the net effect appears to be negligible.

Even assuming the lawyers' agreement to the stipulation amounted to an error, the overall picture presented to the jurors regarding the telephone calls between Robinson and C.B. appears to have been essentially accurate. Or, at the very least, the jurors had before them pertinent information about those calls. Robinson cannot show the stipulation created such prejudice as to drive the jury's verdicts. That is, Robinson has not presented a persuasive argument that had his trial lawyers refused to enter the stipulation, he would have received a more favorable result in the jury room. During the trial, the

State presented testimony from two of C.B.'s friends that C.B. had told them in the days leading up to the murder that she had made plans to meet with Robinson the night she died. See *Robinson*, 293 Kan. at 1009. In Robinson's direct appeal, the Kansas Supreme Court held C.B.'s statements were admissible as substantive evidence under the hearsay exception in K.S.A. 60-460(d)(3). 293 Kan. at 1026-27. That testimony was far more significant and damaging to Robinson than the telephone records and the stipulation related to them.

3. Robinson next complains the district court summarily rejected his contention that his trial lawyers were constitutionally ineffective in failing to object to a portion of the State's closing argument that he says impermissibly shifted the burden of proof to him by commenting on the lack of evidence to support the defense theories as to why Gentry acted on his own to kill C.B. There are several problems with Robinson's position.

First, Robinson could have challenged the State's closing argument on direct appeal and did not. Robinson's point seems perilously close to using a 60-1507 motion as a substitute for a direct appeal. Moreover, Robinson has not suggested the lawyer handling the direct criminal appeal was ineffective for failing to assert the purported problem with closing argument. The absence of a contemporaneous trial objection would not have precluded review on direct appeal. See *State v. Roeder*, 300 Kan. 901, 932, 336 P.3d 831 (2014), *cert. denied* 135 S. Ct. 2316 (2015).

Second, we have reviewed the closing argument and do not see an impermissible shifting of the burden of proof to Robinson.[2] In arguing a case to jurors, the State may comment on deficiencies in the evidence supporting a defense theory. *State v. Williams*, 299 Kan. 911, 940-41, 329 P.3d 400 (2014); *State v. Wilson*, 295 Kan. 605, 623-25, 289 P.3d 1082 (2012). What the State cannot do is use that form of argument as a guise for commenting on a criminal defendant's decision against testifying in his or her own defense, thereby violating a person's right against self-incrimination protected in the Fifth

Amendment to the United States Constitution, or to suggest a defendant has an obligation to produce evidence of his or her innocence to be found not guilty, thereby violating due process protections. See *State v. McKinney*, 272 Kan. 331, 346-47, 33 P.3d 234 (2001), *overruled on other grounds State v. Davis*, 283 Kan. 569, 575, 158 P.3d 317 (2007); see *State v. Broyles*, 272 Kan. 823, 831, 36 P.3d 259 (2001) (prosecutor may fairly argue to jurors defendant's failure to call specific witnesses implies they would not have supported defense theory). Here, of course, Robinson did testify in his own defense; the prosecutor could not have been trying to impermissibly comment on his failure to do so. At the conclusion of the trial, the district court also correctly instructed the jurors on the State's burden of proof. See *McKinney*, 272 Kan. at 346-47.

[2]Robinson complains about this part of the prosecution's rebuttal argument to the jurors:

"One suggestion is well, he did it for revenge. Everett was so angry and so mad, because he loved his brother and his brother had cast him aside, that he just decided to kill [C.B.], on his own. Is there any evidence of that? He decides to kill her on her [*sic*] own. And luckily, because there is no explanation, other than the fact that Mr. Robinson set up the meeting, for Everett picking her up at Skate South.

"Have you heard any evidence, other than the fact that Everett set the—or [Robinson] set the meeting up himself, as to why Everett would know she was there in the first place? And that he would go to pick her up? Ask yourself that question. How does that happen? Ask yourself that. How does that happen, unless this guy right here, sets it up. That's what the evidence shows, is that this guy sitting right here set it up, when he knew where he was gonna be and where he knew where he was."

Robinson has shown neither error nor prejudice in this respect. The district court correctly denied this aspect of the 60-1507 motion. Robinson filed his own amended

10

motion raising additional instances of purportedly improper argument by the prosecutor to which his trial lawyers lodged no objections. In ruling on the motion, the district court treated the amendment as untimely and did not consider the specific issues for that reason. On appeal, Robinson has not contested that ruling and presents none of the points in the amended motion for review. We, therefore, do not consider them. See *State v. Laborde*, 303 Kan. 1, 7-8, 360 P.3d 1080 (2015).

4. Robinson next argues his trial lawyers labored under an impermissible conflict of interest because of the conduct of a private investigator they hired to assist in the criminal case. As we understand the allegation from the appellate record, the investigator turned up information suggesting C.B. wasn't the only underage girl with whom Robinson had a sexual relationship. The investigator provided that information to a newspaper reporter as an anonymous source, and it wound up in some fashion in at least one article about the criminal case.

Robinson filed an ethical complaint against his lawyers because of the investigator's conduct. According to correspondence from the Kansas Disciplinary Administrator's Office in the record, the Disciplinary Administrator found no ethical violation on the part of the lawyers because they had no advance knowledge of the investigator's communications with the reporter, did not condone the investigator's actions, and immediately fired the investigator when they learned what he had done. Nothing in the record or the 60-1507 motion calls into question the accuracy of the Disciplinary Administrator's correspondence as to the underlying circumstances.

Robinson submits his trial lawyers had a conflict of interest because they tried to cover up the investigator's actions. The record isn't exactly clear what the lawyers supposedly did to hide the matter or how that created a conflict between the lawyers and Robinson.

Plainly, criminal defendants are constitutionally entitled to be represented by lawyers who have no conflicts of interest that would divert them from fully advocating on their clients' behalf. *Sola-Morales v. State*, 300 Kan. 875, 883, 335 P.3d 1162 (2014); *State v. Bowen*, 299 Kan. 339, 343, 323 P.3d 853 (2014). Such a conflict imperils the Sixth Amendment right to counsel. *Mickens v. Taylor*, 535 U.S. 162, 166-67, 122 S. Ct. 1237, 152 L. Ed. 2d 291 (2002). Relying on *Mickens*, the Kansas Supreme Court has recognized three categories of conflicting interests in criminal cases: (1) the district court permits a lawyer to represent multiple clients with antagonistic interests in the same proceeding despite an objection to the representation; (2) a lawyer represents multiple clients but no objection has been lodged; and (3) the representation of a current client conflicts either with a duty owed a former client or with the lawyer's own personal or financial interests. *Sola-Morales*, 300 Kan. at 884.

Robinson contends the lawyers had an obligation to inform the district court of the investigator's conduct before the trial, so the district court could inquire into any potential conflict. He says the lawyers did not because of some sense of loyalty to or friendship with the investigator.

The purported conflict between Robinson and his lawyers is hardly obvious in this situation. But assuming Robinson's allegations about the investigator created a conflict of interest for the lawyers, it would be of the type described in the second part of the third category outlined in *Sola-Morales* implicating some personal interest of counsel. The court has referred to this type of conflict as a "*Mickens* reservation" claim because the *Mickens* decision does not identify the standard to be applied in determining whether a defendant should be granted relief. 300 Kan. at 884. The court has indicated that either of two standards could be applied but has not itself decided which governs. See *Fuller v. State*, 303 Kan. ___, 363 P.3d 373, 382-83 (2015); *Sola-Morales*, 300 Kan. at 884. The defendant must satisfy either the *Strickland* standard requiring a showing that but for the conflict the outcome at trial would have been different or a more relaxed standard

12

showing only that the quality of the legal representation was adversely affected by the conflict. *Fuller*, 363 P.3d at 382-83; *Sola-Morales*, 300 Kan. at 884.

For purposes of this appeal, we assume the "adversely affected" standard to be appropriate simply because it is more favorable to Robinson than the *Strickland* test. That is, we simply give Robinson the benefit in dealing with the question left unanswered in *Mickens*, *Sola-Morales*, and *Fuller* rather than attempting to fashion a substantive answer ourselves. Even so, Robinson has not offered any concrete examples of how the dustup with the private investigator translated into diminished legal representation during his trial. Nor has Robinson advanced any plausible inference suggesting his lawyers tried the case in a certain way that simultaneously aimed to benefit the investigator and actually disadvantaged him. The district court, therefore, did not err on this claim.

5. Finally, Robinson contends his lawyers failed to adequately impeach A.K., a friend of C.B.'s, who testified to the relationship between Robinson and C.B. He says the lawyers should have impeached A.K. by presenting evidence after she had reported what appeared to be an improper sexual relationship between him and C.B., both of them denied such a relationship. But the trial evidence showed that the two went to great lengths to hide their sexual relationship. And, of course, the evidence established they, in fact, had such a relationship. Robinson's notion of impeaching A.K. in that manner is without any legal foundation and simply would not have been permitted.

Robinson also contends his lawyers failed to demonstrate A.K.'s dislike of him as a way of discrediting her testimony. See *State v. Scott*, 39 Kan. App. 2d 49, 56, 177 P.3d 972 (2008) ("One of the methods or techniques for attacking the credibility of a witness is to show partiality, including bias, motive, and interest in the outcome."). The trial transcript, however, belies Robinson's assertion. On cross-examination by one of Robinson's lawyers, A.K. admitted she strongly disapproved of the relationship between Robinson and C.B. A.K. also testified that she did not like the way Robinson treated C.B.

13

and that she repeatedly told C.B. she was too young to be involved with him. The jurors surely understood A.K. bore Robinson considerable animosity.

Robinson points out A.K. testified to her dislike of him at a preliminary examination, and he says that at least once she raised her voice to emphasize the point. He faults his lawyers for not confronting A.K. at trial with the emotionally charged way she testified at the earlier hearing. While the hearing transcript confirms A.K. testified she did not like Robinson—something his lawyers brought out at trial—it does not capture the tone or volume of her voice during her testimony. No transcript does. So his lawyers could not have confirmed to the jurors that A.K. shouted, whispered, or spoke in a conversational manner during the preliminary examination. Even if one of the lawyers had asked A.K. if she raised her voice during the preliminary hearing in expressing her dislike of Robinson and she agreed, that wouldn't have added much to her admission at trial that she thoroughly disapproved of Robinson's relationship with C.B. Again, the district court properly disposed of the point without requiring an evidentiary hearing on the 60-1507 motion.

*Conclusion*

Having considered all of the issues Robinson has raised on appeal, we find no grounds that would require an evidentiary hearing. Nor do we see anything that would conceivably warrant substantive relief. Accordingly, we have no reason to reverse the district court's denial of the 60-1507 motion.

Affirmed.

14