NOT DESIGNATED FOR PUBLICATION

No. 116,399

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

SARAH B. ALCORN,
*Appellant*.


MEMORANDUM OPINION

Appeal from Reno District Court; TIMOTHY J. CHAMBERS, judge. Opinion filed November 3, 2017. Reversed and remanded with directions.

*Sarah Ellen Johnson*, of Capital Appellate Defender Office, for appellant.

*Keith E. Schroeder*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before BRUNS, P.J., MCANANY, J., and HEBERT, S.J.

PER CURIAM: Sarah B. Alcorn appeals from her conviction by a jury of aggravated battery. She argues the district court committed reversible error in excluding a line of questioning which could have established potential bias on the part of the complaining witness and revealed a motive to fabricate testimony against Alcorn.

We agree the district court erred in excluding the evidence, and we further find the error was not harmless under the circumstances of the case. Accordingly, we reverse the conviction and remand for a new trial.

1

*Factual and Procedural Background*

On November 19, 2014, Alcorn became engaged in a domestic dispute with her boyfriend, Skylar Jump. Alcorn and Jump were involved in a "whirlwind relationship" and lived together at Jump's grandmother's house. At the time of the dispute, Alcorn was pregnant with Jump's child. Alcorn and Jump were home alone during the dispute, and their accounts of what happened differ. Ultimately, Alcorn was arrested for cutting Jump with a kitchen knife. The State charged Alcorn with aggravated battery, domestic battery, and criminal threat. The State did not charge Jump.

At Alcorn's trial in 2016, Jump testified that on the day of the dispute, he was playing a video game when he and Alcorn began to have a "small argument." Jump testified Alcorn went into the bathroom and he followed because he was afraid she would harm herself or the baby. The argument soon became a "screaming match." When Alcorn kept yelling, he tried to give her a hug to calm her down, but she pushed him onto the couch and started hitting him in the face with her fists. Jump testified he did not hit Alcorn, only tried to push her off of him and that this was the only time he made physical contact with Alcorn. Alcorn then allegedly spit in Jump's face and went to the kitchen where she grabbed a large knife. Jump was still on the couch when Alcorn came towards him with the knife, threatened to kill him, and attempted to stab him. Jump said he put out his hand in self-defense and the knife sliced the top of his finger off. At this point, Jump's grandmother and mother returned home and Jump's mother called the police. Jump's mother and grandmother testified at trial that Jump told them Alcorn stabbed him.

Alcorn maintained at trial that she cut Jump out of self-defense. She testified that on the day of the dispute, she was at Jump's grandmother's house with Jump and had morning sickness due to her pregnancy. Alcorn and Jump began to argue, and Alcorn decided to take a bath. As she began to undress in the bathroom, she heard Jump "charging toward the door." Alcorn testified that Jump began pounding on the door and

2

shoved it open. Alcorn stated she found her phone to call for help, but Jump took the phone and smashed it. She ran because she was scared, but Jump hit her in the face, wrapped his arms around her, and used his legs to trip her. Alcorn then ran for the kitchen and grabbed a knife. Alcorn testified that Jump then reached for the blade of the knife and cut his hand.

Before trial, Alcorn gave birth to Jump's child, Stormy. Stormy lived with Jump. On cross-examination of Jump, defense counsel questioned Jump about the custody of Stormy:

"Q: Correct? [Stormy] lives with you?
"A: Yes.
"Q: And you want it to stay that way, don't you?
"A: Yes.
"Q: And you're aware that [Alcorn] wants Stormy to live with her?
"A: I know it's not possible."

Defense counsel later asked Jump, "If [Alcorn]'s convicted that would probably seal the deal that your daughter will stay with you." The State objected. The district court judge replied, "Well, counsel approach. 'Cause we're going to open doors we ought to be aware of what we're doing." The judge sustained the objection. At a later bench conference, the judge stated that he "did not want to open the door as to issues involving custody which would have brought out . . . the defendant being in the Department of Corrections [which] caused custody to be with the father plus all of the other convictions that [Alcorn] has." The judge specified that he sustained the objection on the basis the line of questioning was "irrelevant[,] finding the prejudicial value outweigh[ed] any probative value."

3

The jury convicted Alcorn of aggravated battery and acquitted her of domestic battery and criminal threat. The judge granted Alcorn a downward durational departure and sentenced Alcorn to 12 months in prison and 12 months of postrelease supervision.

Alcorn timely appeals her conviction.

*Exclusion of Child Custody Evidence*

Alcorn argues on appeal that the district court committed reversible error by sustaining the State's objection to the defense questioning Jump regarding the issue of child custody. Alcorn argues she was seeking to discredit Jump's testimony by establishing a motive for Jump to fabricate or embellish his testimony in order to secure Alcorn's conviction, and consequently maintain custody of their child. The State asserts the trial court did not err by excluding the line of questioning proposed by the defense as being irrelevant.

*Issue Preservation*

The State first raises a threshold issue by arguing that Alcorn did not properly preserve the issue for appeal. K.S.A. 60-405 generally precludes appellate review of an evidentiary challenge absent a timely and specific objection made on the record:

> "A verdict or finding shall not be . . . reversed, by reason of the erroneous exclusion of evidence unless it appears of record that the proponent of the evidence either made known the substance of the evidence in a form and by a method approved by the judge, or indicated the substance of the expected evidence by questions indicating the desired answers."

Here, Alcorn proposed a question to Jump to which the district court sustained the *State's* objection. Although the ensuing discussion at trial occurred out of the hearing

4

distance of the court reporter, the trial court's explanation during the subsequent bench conference clearly indicated it was aware of the type of evidence that defense counsel was attempting to pursue—the impact of child custody on the complaining witness' testimony. The judge commented that he "did not want to open the door as to issues involving custody."

We find that it was not necessary for Alcorn to further "object" to the court's ruling sustaining the State's objection. The question asked of Jump by defense counsel indicated the substance of the expected evidence—i.e., that Jump wished to secure a felony conviction of Alcorn in order to maintain custody of their child. The in-court proceedings and the bench conference fulfilled the purpose of K.S.A. 60-405 and provide an adequate record for this court to review the merits of Alcorn's claim that the trial court erroneously excluded the evidence. See *State v. Swint*, 302 Kan. 326, 328-34, 352 P.3d 1014 (2015). See also *In re Acquisition of Property by Eminent Domain*, 299 Kan. 37, 41, 320 P.3d 955 (2014).

*Relevance*

The district court specifically ruled the proposed line of questioning regarding child custody was "irrelevant[,] finding the prejudicial value outweigh[ed] any probative value."

Generally speaking, all relevant evidence is admissible. K.S.A. 60-407(f). K.S.A. 60-401(b) defines relevant evidence as evidence having "any tendency in reason to prove any material fact." Relevant evidence is: (1) material, meaning the evidence must pertain to a disputed fact or issue; and (2) probative, meaning it has a tendency to prove a material fact or issue in the case. *State v. Boleyn*, 297 Kan. 610, 622, 303 P.3d 680 (2013). Evidence is material when the fact it supports is in dispute and is significant

5

under the substantive law of the case. *State v. McCormick*, 305 Kan. 43, 47, 378 P.3d 543 (2016).

The appellate standard of review for materiality is de novo. *State v. Page*, 303 Kan. 548, 550, 363 P.3d 391 (2015). "'Evidence is probative if it furnishes, establishes, or contributes towards proof. Probativity is reviewed for abuse of discretion.' [Citation omitted.]" *McCormick*, 305 Kan. at 47. A judicial action constitutes an abuse of discretion if (1) no reasonable person would take the view adopted by the trial court; (2) it is based on an error of law; or (3) it is based on an error of fact. *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015).

The State argues in its brief that the evidence was irrelevant because "[a] child custody dispute, that occurred after the birth of the child, was irrelevant to crimes committed before the child was born." The State argues that, on the date of the dispute, Jump did not yet have a motive to fabricate his story, so any evidence of a dispute was irrelevant. But the State's argument is misplaced. Whether Jump had a motivation to fabricate his story when he reported the crime to police is not at issue: Instead, the issue is whether Jump had a motivation to fabricate his testimony before the jury at trial in 2016.

In this case, Alcorn contends the district court's exclusion of the evidence was improper because evidence of bias is relevant. Kansas courts agree and have held that "'proof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony.' [Citation omitted.]" *State v. Ross*, 280 Kan. 878, 886, 127 P.3d 249 (2006).

The defense sought to discredit Jump's testimony at trial by pointing out a potential motive he had to secure a felony conviction against Alcorn—child custody. The

6

fact Jump wanted to secure a felony conviction against Alcorn is relevant because it has a "tendency to prove" Jump had a motive to lie in his testimony. The evidence is material because it pertains to a disputed issue—whether Alcorn was acting in self-defense. The evidence would help to establish the weight of credibility of Jump's testimony that Alcorn intentionally attacked Jump. "The reliability of a witness is an essential jury consideration, one upon which guilt or innocence may ultimately rest." *State v. Sean*, 306 Kan. App. 2d 963, 399 P.3d 168, 188 (2017). Even under an abuse of discretion standard, the evidence is probative.

Evidence to help establish the credibility of Jump was especially probative in this "he-said, she-said" case. Alcorn maintained at trial that she cut Jump in self-defense, and Jump testified that Alcorn cut him in anger. There were no witnesses to dispute because Alcorn and Jump were home alone. The outcome of this case, and Alcorn's conviction, ultimately depended on whether the jury believed Jump's or Alcorn's version of the story. The child custody dispute between Alcorn and Jump—a potential motivation for Jump to fabricate or embellish his testimony—was clearly relevant and the trial judge erred in finding otherwise.

*Prejudice*

Under K.S.A. 60-445, a trial court has discretion to exclude relevant evidence upon a finding that its probative value is outweighed by its potential for producing undue prejudice. However, it is error to exclude a proffer of evidence that is relevant, admissible, and noncumulative when it is an integral part of the defendant's theory of defense. *State v. King*, 293 Kan. 1057, 1068, 274 P.3d 599 (2012). K.S.A. 60-420 allows a party to attack or support the credibility of a witness:

> "Subject to K.S.A. 60-421 and 60-422, for the purpose of impairing or supporting the credibility of a witness, any party including the party calling the witness may examine

7

the witness and introduce extrinsic evidence concerning any conduct by him or her and any other matter relevant upon the issues of credibility."

"One of the methods or techniques for attacking the credibility of a witness is to show partiality, including bias, motive, and interest in the outcome." *State v. Scott*, 39 Kan. App. 2d 49, 56, 177 P.3d 972 (2008). Bias may always be shown in order to place the witness' testimony in proper perspective, and a party should have wide latitude in establishing bias of a witness. *State v. Akins*, 298 Kan. 592, Syl. ¶ 1, 315 P.3d 868 (2014). Where, as here, the determination of the main issue at trial—whether Alcorn was acting in self-defense—depended entirely on the credibility of Jump and Alcorn, a wide range of cross-examination should have been permitted. *Scott*, 39 Kan. App. 2d 49, Syl. ¶ 7. Since Jump had an "interest in the outcome" of the trial, Alcorn was entitled to have "these matters exposed to the jury." *Scott*, 39 Kan. App. 2d at 51.

Here, the district court's explicit reason for excluding the testimony sought by Alcorn was to avoid "opening the door" to evidence that she was in custody of the Department of Corrections and had a long prior history. However, a district court may not exclude evidence of bias or motive just because it is concerned about exposing evidence of prior criminal activity. See *Scott*, 39 Kan. App. 2d at 58-60 (citing *State v. Bowman*, 252 Kan. 883, 850 P.2d 236 [1993]; *State v. Wesson*, 247 Kan. 639, 802 P.2d 574, *cert. denied* 501 U.S. 1236 [1991]; *State v. Loveland,* 8 Kan. App. 2d 196, 653 P.2d 472 [1982]).

The decision to exclude the evidence to prevent prejudice to Alcorn, the proponent of the evidence, was quite simply not the district court's decision to make. Whether the defense was willing to pursue a line of questioning knowing it might open the door to other possibly prejudicial information regarding Alcorn was a strategic decision for the defense to make. Alcorn was entitled to bring in evidence that illustrated Jump's social

relationship with her which may have indicated his bias or prejudice in the current controversy. See *Scott*, 39 Kan. App. 2d at 58-59.

*Harmless Error Analysis*

"Although the failure to allow a party to cross-examine a witness about a possible bias or motivation for testifying is error, the error may be harmless and does not automatically result in reversal." *Scott*, 39 Kan. App. 2d at 62. The erroneous exclusion of evidence is subject to review for harmless error under K.S.A. 2016 Supp. 60-261, which provides:

> "Unless justice requires otherwise, no error in admitting or excluding evidence, or any other error by the court or a party, is ground for granting a new trial, for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order. At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights."

In *State v. Hills*, 264 Kan. 437, 450, 957 P.2d 496 (1998), our Supreme Court applied harmless error analysis to the improper denial of a defendant's opportunity to impeach a witness for bias. The party benefitting from the error—here the State—bears the burden of proving it harmless. See *State v. Logsdon*, 304 Kan. 3, 39, 371 P.3d 836 (2016). Where, as here, the error implicates only a statutory right, the State need only persuade the reviewing court that there is no reasonable probability that the error affected the outcome of the trial. *State v. McCullough*, 293 Kan. 970, 983, 270 P.3d 1142 (2012); see *State v. Ward*, 292 Kan. 541, Syl. ¶ 6, 256 P.3d 801 (2011).

In *State v. Burnett*, 300 Kan. 419, 434-35, 329 P.3d 1169 (2014), the court reiterated several factors which an appellate court can consider in reviewing the erroneous exclusion of evidence for harmless error: "[T]he importance of the witness' testimony, whether the testimony was cumulative, the presence or absence of evidence

9

corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and the overall strength of the case.' [Citation omitted.]"

Applying these factors, the State cannot meet its burden of persuasion in this case. Jump's testimony was of vital importance, since this was a "he-said, she-said" case. There were no other witnesses to corroborate his testimony, and the entirety of the State's case rested on his testimony and credibility. The State raises no argument that the proposed evidence was cumulative, nor does it suggest that other cross-examination was sufficient to achieve the defense purpose of discrediting Jump's testimony. If the defense had been able to successfully undermine Jump's credibility by establishing bias and a motive to fabricate or embellish his testimony, it cannot be said that the State had any other evidence so strong that the jury would still have convicted Alcorn. The jury should have been allowed to hear all the relevant evidence and make its evaluation of the weight and credibility to be accorded to each of the parties' testimony.

The State, apparently overconfident in its position that no error occurred, essentially offered no alternative argument as to why any error was harmless and has thus failed to persuade us that there was no reasonable probability that the error in disallowing the evidence of bias or motive affected the outcome of the trial. We are unable to find, with the requisite degree of certainty, that the error was harmless and, accordingly, we reverse Alcorn's conviction and remand the case for new trial.

Reversed and remanded with directions.